GREAT AMERICAN FEDERAL SAVINGS & LOAN
ASSOCIATION ET AL. *v.* NOVOTNY

No. 78–753.   Argued April 18, 1979—Decided June 11, 1979

STEWART, J., delivered the opinion of the Court, in which BURGER, C. J., and BLACKMUN, POWELL, REHNQUIST, and STEVENS, JJ., joined. POWELL, J., *post*, p. 378, and STEVENS, J., *post*, p. 381, filed concurring opinions. WHITE, J., filed a dissenting opinion, in which BRENNAN and MARSHALL, JJ., joined, *post*, p. 385.

*Eugene K. Connors* argued the cause for petitioners. With him on the briefs was *Walter G. Bleil.*

*Stanley M. Stein* argued the cause and filed a brief for respondent.

*Deputy Solicitor General Wallace* argued the cause for the United States et al. as *amici curiae* urging affirmance. On the brief were *Solicitor General McCree, Assistant Attorney General Days, Louis F. Claiborne, Walter W. Barnett, Mildred M. Matesich, Lutz Alexander Prager,* and *Paul E. Mirengoff.**

*Avrum M. Goldberg, William R. Weissman, Robert E. Williams,* and *Douglas S. McDowell* filed a brief for the Equal Employment Advisory Council as *amicus curiae* urging reversal.

*Isabelle Katz Pinzler* filed a brief for the American Civil Liberties Union et al. as *amici curiae* urging affirmance.

Mr. Justice Stewart delivered the opinion of the Court.

More than a century after their passage, the Civil Rights Acts of the Reconstruction Era continue to present difficult problems of statutory construction. Cf. *Chapman* v. *Houston Welfare Rights Org.*, 441 U. S. 600. In the case now before us, we consider the scope of 42 U. S. C. § 1985 (3) (1976 ed., Supp. II), the surviving version of § 2 of the Civil Rights Act of 1871.[1]

I

The respondent, John R. Novotny, began his career with the Great American Federal Savings and Loan Association (hereinafter Association) in Allegheny County, Pa., in 1950. By 1975, he was secretary of the Association, a member of its board of directors, and a loan officer. According to the allegations of the complaint in this case the Association "intentionally and deliberately embarked upon and pursued a course of conduct the effect of which was to deny to female employees

---

[1] Title 42 U. S. C. § 1985 (3) (1976 ed., Supp. II), Rev. Stat. § 1980, provides:

"If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws; or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

equal employment opportunity . . . ." When Novotny expressed support for the female employees at a meeting of the board of directors, his connection with the Association abruptly ended. He was not re-elected as secretary; he was not re-elected to the board; and he was fired. His support for the Association's female employees, he alleges, was the cause of the termination of his employment.

Novotny filed a complaint with the Equal Employment Opportunity Commission under Title VII of the Civil Rights Act of 1964.[2] After receiving a right-to-sue letter,[3] he brought this lawsuit against the Association and its directors in the District Court for the Western District of Pennsylvania. He claimed damages under 42 U. S. C. § 1985 (3) (1976 ed., Supp. II), contending that he had been injured as the result of a conspiracy to deprive him of equal protection of and equal privileges and immunities under the laws.[4] The District Court granted the defendants' motion to dismiss. It held that § 1985 (3) could not be invoked because the directors of a single corporation could not, as a matter of law and fact, engage in a conspiracy. 430 F. Supp. 227, 230.[5]

Novotny appealed. After oral argument before a three-judge panel, the case was reargued before the en banc Court of Appeals for the Third Circuit, which unanimously reversed

---

[2] 42 U. S. C. § 2000e et seq.

[3] 42 U. S. C. § 2000e-5 (f) (1).

[4] His complaint also alleged, as a second cause of action, that his discharge was in retaliation for his efforts on behalf of equal employment opportunity, and thus violated § 704 (a) of Title VII of the Civil Rights Act of 1964, 78 Stat. 257, as amended, 86 Stat. 109. Section 704 (a), as set forth in 42 U. S. C. § 2000e-3 (a), reads in relevant part:

"It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

[5] As to the Title VII claim, the District Court held that Novotny was not a proper plaintiff under § 704 (a).

the District Court's judgment. 584 F. 2d 1235. The Court of Appeals ruled that Novotny had stated a cause of action under § 1985 (3). It held that conspiracies motivated by an invidious animus against women fall within § 1985 (3), and that Novotny, a male allegedly injured as a result of such a conspiracy, had standing to bring suit under that statutory provision. It ruled that Title VII could be the source of a right asserted in an action under § 1985 (3), and that intracorporate conspiracies come within the intendment of the section. Finally, the court concluded that its construction of § 1985 (3) did not present any serious constitutional problem.[6]

We granted certiorari, 439 U. S. 1066, to consider the applicability of § 1985 (3) to the facts alleged in Novotny's complaint.

## II

The legislative history of § 2 of the Civil Rights Act of 1871, of which § 1985 (3) was originally a part, has been reviewed many times in this Court.[7] The section as first en-

---

[6] The Court of Appeals ruled that Novotny had also stated a valid cause of action under Title VII. It held that § 704 (a) applies to retaliation for both formal and informal actions taken to advance the purposes of the Act. That holding is not now before this Court.

We note the relative narrowness of the specific issue before the Court. It is unnecessary for us to consider whether a plaintiff would have a cause of action under § 1985 (3) where the defendant was not subject to suit under Title VII or a comparable statute. Cf. *United States* v. *Johnson,* 390 U. S. 563. Nor do we think it necessary to consider whether § 1985 (3) creates a remedy for statutory rights other than those fundamental rights derived from the Constitution. Cf. *Griffin* v. *Breckenridge,* 403 U. S. 88.

[7] A partial list of the opinions in this Court that have discussed the Act's legislative history includes *Chapman* v. *Houston Welfare Rights Org.,* 441 U. S. 600, 608–612 (opinion of the Court); *id.,* at 650–658 (WHITE, J., concurring in judgment); *id.,* at 627–640 (POWELL, J., concurring); *Monell* v. *New York City Dept. of Social Services,* 436 U. S. 658, 665–689; *District of Columbia* v. *Carter,* 409 U. S. 418, 423, 425–429; *Griffin* v. *Breckenridge, supra,* at 99–101; *Adickes* v. *S. H. Kress Co.,* 398

acted authorized both criminal and civil actions against those who have conspired to deprive others of federally guaranteed rights. Before the 19th century ended, however, the Court found the criminal provisions of the statute unconstitutional because they exceeded the scope of congressional power, *United States* v. *Harris,* 106 U. S. 629; *Baldwin* v. *Franks,* 120 U. S. 678, and the provisions thus invalidated were later formally repealed by Congress. The civil action provided by the Act remained, but for many years was rarely, if ever, invoked.

The provisions of what is now § 1985 (3) were not fully considered by this Court until 1951, in the case of *Collins* v. *Hardyman,* 341 U. S. 651.[8] There the Court concluded that the section protected citizens only from injuries caused by conspiracies "under color of state law." [9] Twenty years later, in *Griffin* v. *Breckenridge,* 403 U. S. 88, the Court unanimously concluded that the *Collins* Court had accorded to the provisions of § 1985 (3) too narrow a scope.[10] The fears concerning congressional power that had motivated the Court in

U. S. 144, 162–166 (opinion of the Court); *id.,* at 215–231 (BRENNAN, J., concurring in part and dissenting in part); *Monroe* v. *Pape,* 365 U. S. 167, 172–185 (opinion of the Court); *id.,* at 194–198 (Harlan, J., concurring in judgment); *id.,* at 225–236 (Frankfurter, J., dissenting).

[8] At least two earlier cases in this Court involved causes of action based upon what is now § 1985 (3). In *Hague* v. *CIO,* 307 U. S. 496, the plaintiff had stated claims based on the predecessors of both § 1985 (3) and 42 U. S. C. § 1983. The opinions of Mr. Justice Roberts and Mr. Justice Stone both discussed the § 1983 cause of action, but neither discussed the conspiracy claim. In *Snowden* v. *Hughes,* 321 U. S. 1, the plaintiff had also stated claims under the predecessors of both sections. The Court held that no constitutional violation had been shown, and did not consider whether the statutes could have been utilized if such a showing had been made.

[9] Mr. Justice Burton dissented, joined by Mr. Justice Black and Mr. Justice Douglas. 341 U. S., at 663.

[10] Mr. Justice Harlan concurred, with one reservation. He found it unnecessary to rely, as the Court did in part, on the defendants' alleged interference with the right of interstate travel. 403 U. S., at 107.

the *Collins* case had been dissolved by intervening cases. See *Griffin* v. *Breckenridge, supra,* at 96–97, 104–106. Therefore, the Court found that § 1985 (3) did provide a cause of action for damages caused by purely private conspiracies.

The Court's opinion in *Griffin* discerned the following criteria for measuring whether a complaint states a cause of action under § 1985 (3):

> "To come within the legislation a complaint must allege that the defendants did (1) 'conspire or go in disguise on the highway or on the premises of another' (2) 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.' It must then assert that one or more of the conspirators (3) did, or caused to be done, 'any act in furtherance of the object of [the] conspiracy,' whereby another was (4a) 'injured in his person or property' or (4b) 'deprived of having and exercising any right or privilege of a citizen of the United States.'" 403 U. S., at 102–103.

Section 1985 (3) provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates. The primary question in the present case, therefore, is whether a person injured by a conspiracy to violate § 704 (a) of Title VII of the Civil Rights Act of 1964 is deprived of "the equal protection of the laws, or of equal privileges and immunities under the laws" within the meaning of § 1985 (3).[11]

Under Title VII, cases of alleged employment discrimination are subject to a detailed administrative and judicial process designed to provide an opportunity for nonjudicial and

---

[11] For the purposes of this question, we assume but certainly do not decide that the directors of a single corporation can form a conspiracy within the meaning of § 1985 (3).

nonadversary resolution of claims. As the Court explained in *Alexander* v. *Gardner-Denver Co.*, 415 U. S. 36, 44:

"Congress enacted Title VII of the Civil Rights Act of 1964, 42 U. S. C. § 2000e *et seq.*, to assure equality of employment opportunities by eliminating those practices and devices that discriminate on the basis of race, color, religion, sex, or national origin . . . . Cooperation and voluntary compliance were selected as the preferred means for achieving this goal. To this end, Congress created the Equal Employment Opportunity Commission and established a procedure whereby existing state and local employment opportunity agencies, as well as the Commission, would have an opportunity to settle disputes through conference, conciliation, and persuasion before the aggrieved party was permitted to file a lawsuit."

As part of its comprehensive plan, Congress provided that a complainant in a State or locality with a fair employment commission must first go to that commission with his claim. Alternatively, an employee who believes himself aggrieved must first file a charge with the federal Equal Employment Opportunity Commission.[12] The time limitations for administrative and judicial filing are controlled by express provisions of the statute.[13] At several different points, the statutory

---

[12] Title 42 U. S. C. § 2000e–5 (b) provides for filing charges with the federal Commission. When a State or locality has a "State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto," filing a complaint with that authority is a predicate for assertion of the federal rights involved. 42 U. S. C. § 2000e–5 (c). If a member of the EEOC files a charge alleging violations in such a State or locality, the federal Commission must notify the state or local authority of the charge before taking any action. 42 U. S. C. § 2000e–5 (d). Cf. *Love* v. *Pullman Co.*, 404 U. S. 522.

[13] The statute requires that a complaint be filed with the federal agency within 180 days "after the alleged unlawful employment practice

plan prevents immediate filing of judicial proceedings in order to encourage voluntary conciliation.[14] The EEOC has the power to investigate and to prosecute a civil action in a complainant's case.[15] The Act provides for injunctive relief, specifically including backpay relief.[16] The majority of the

occurred . . . ." If the complainant has filed a charge with a state or local agency, the time is extended to 300 days from the event, or 30 days from the end of state or local proceedings, whichever is sooner. 42 U. S. C. § 2000e–5 (e). After a "right to sue" letter issues from the EEOC, the complainant is given another 90 days to bring a civil action in a federal district court. 42 U. S. C. § 2000e–5 (f)(1). Cf. *United Air Lines, Inc.* v. *Evans,* 431 U. S. 553.

[14] Within 10 days of the Commission's receipt of a complaint, it must notify the employer of the charge, including the date, place, and circumstances of the alleged violation. 42 U. S. C. §§ 2000e–5 (b), (e). Only if the Commission has been unable to secure an acceptable conciliation agreement from the employer within 30 days of the filing of the charge may it bring a civil action against the employer. 42 U. S. C. § 2000e–5 (f)(1). The complainant must await notice from the Commission of his right to bring a suit. This notice is provided if (1) the Commission dismisses his charge, (2) neither the Commission nor the Attorney General has filed a civil action in his case within 180 days of the filing of the charge, or (3) the Commission has not entered into a conciliation agreement to which he is a party. 42 U. S. C. § 2000e–5 (f)(1). Cf. *Occidental Life Ins. Co.* v. *EEOC,* 432 U. S. 355.

[15] 42 U. S. C. §§ 2000e–5 (a), (b), (f)(1). See *Occidental Life Ins. Co.* v. *EEOC, supra.*

[16] Section 706 (g) of the Act, as amended, as set forth in 42 U. S. C. § 2000e–5 (g), provides:

"If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the

federal courts have held that the Act does not allow a court to award general or punitive damages.[17] The Act expressly allows the prevailing party to recover his attorney's fees, and, in some cases, provides that a district court may appoint counsel for a plaintiff.[18] Because the Act expressly authorizes only equitable remedies, the courts have consistently held that neither party has a right to a jury trial.[19]

If a violation of Title VII could be asserted through § 1985 (3), a complainant could avoid most if not all of these de-

person or persons discriminated against shall operate to reduce the back pay otherwise allowable. No order of the court shall require the admission or reinstatement of an individual as a member of a union, or the hiring, reinstatement, or promotion of an individual as an employee, or the payment to him of any back pay, if such individual was refused admission, suspended, or expelled, or was refused employment or advancement or was suspended or discharged for any reason other than discrimination on account of race, color, religion, sex, or national origin or in violation of section 2000e–3 (a) of this title."

See *Albemarle Paper Co.* v. *Moody,* 422 U. S. 405.

[17] See *EEOC* v. *Detroit Edison Co.,* 515 F. 2d 301, 308–310 (CA6 1975); *Richerson* v. *Jones,* 551 F. 2d 918, 926–928 (CA3 1977); cases collected in *id.,* at 926 n. 13.

[18] Title 42 U. S. C. § 2000e–5 (k) provides:

"In any action or proceeding under this subchapter the court in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person."

See *Christiansburg Garment Co.* v. *EEOC,* 434 U. S. 412.

Title 42 U. S. C. § 2000e–5 (f) (1) provides that "[u]pon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security."

[19] See *Slack* v. *Havens,* 522 F. 2d 1091, 1094 (CA9 1975); *EEOC* v. *Detroit Edison Co., supra,* at 308; *Johnson* v. *Georgia Highway Express,* 417 F. 2d 1122, 1125 (CA5 1969); *Smith* v. *Hampton Training School for Nurses,* 360 F. 2d 577, 581 (CA4 1966) (en banc). See also *Albemarle Paper Co.* v. *Moody, supra,* at 441–445 (REHNQUIST, J., concurring).

tailed and specific provisions of the law. Section 1985 (3) expressly authorizes compensatory damages; punitive damages might well follow. The plaintiff or defendant might demand a jury trial. The short and precise time limitations of Title VII would be grossly altered.[20] Perhaps most importantly, the complainant could completely bypass the administrative process, which plays such a crucial role in the scheme established by Congress in Title VII.

The problem in this case is closely akin to that in *Brown* v. *GSA,* 425 U. S. 820. There, we held that § 717 of Title VII provides the exclusive remedy for employment discrimination claims of those federal employees that it covers. Our conclusion was based on the proposition that

> "[t]he balance, completeness, and structural integrity of § 717 are inconsistent with the petitioner's contention that the judicial remedy afforded by § 717 (c) was designed merely to supplement other putative judicial relief." 425 U. S., at 832.

Here, the case is even more compelling. In *Brown,* the Court concluded that § 717 displaced other causes of action arguably available to .assert substantive rights similar to those granted by § 717. Section 1985 (3), by contrast, *creates* no rights. It is a purely remedial statute, providing a civil cause of action when some otherwise defined federal right—to equal protection of the laws or equal privileges and immunities under the laws—is breached by a conspiracy in the manner defined by the section. Thus, we are not faced in this case with a question of implied repeal. The right Novotny claims under § 704 (a) did not even arguably exist before the passage of Title

---

[20] The Court of Appeals for the Third Circuit recently applied a 6-year Pennsylvania statute of limitations to employment discrimination claims brought under 42 U. S. C. § 1981. *Davis* v. *United States Steel Supply,* 581 F. 2d 335, 337 (1978). See also *Johnson* v. *Railway Express Agency,* 421 U. S. 454, 462–466.

VII. The only question here, therefore, is whether the rights created by Title VII may be asserted within the *remedial* framework of § 1985 (3).

This case thus differs markedly from the cases recently decided by this Court that have related the substantive provisions of last century's Civil Rights Acts to contemporary legislation conferring similar substantive rights. In those cases we have held that substantive rights conferred in the 19th century were not withdrawn, *sub silentio*, by the subsequent passage of the modern statutes. Thus, in *Jones* v. *Alfred H. Mayer Co.*, 392 U. S. 409, 413–417, we considered the effect of the fair housing provisions of the Civil Rights Act of 1968 on the property rights guaranteed by the Civil Rights Act of 1866, now codified at 42 U. S. C. § 1982. And in *Johnson* v. *Railway Express Agency*, 421 U. S. 454, 457–461, we held that the passage of Title VII did not work an implied repeal of the substantive rights to contract conferred by the same 19th-century statute and now codified at 42 U. S. C. § 1981. See also *Sullivan* v. *Little Hunting Park*, 396 U. S. 229, 237–238; *Runyon* v. *McCrary*, 427 U. S. 160, 174–175.[21]

Somewhat similarly, in *Alexander* v. *Gardner-Denver Co.*, 415 U. S. 36, the Court upheld an employee's invocation of two alternative remedies for alleged employment discrimina-

---

[21] Another difference between those cases and this one is to be found in the legislative history of the Civil Rights Act of 1964, as amended, and the Civil Rights Act of 1968. As the Court noted in *Johnson* v. *Railway Express Agency, supra,* and *Jones* v. *Alfred H. Mayer Co.*, 392 U. S. 409, the Civil Rights Acts of 1866 and 1871 were explicitly discussed during the course of the legislative debates on both the Civil Rights Act of 1968 and the 1972 amendments to the 1964 Act, and the view was consistently expressed that the earlier statutes would not be implicitly repealed. See *Johnson* v. *Railway Express Agency, supra,* at 457–459; *Jones* v. *Alfred H. Mayer Co., supra,* at 413–417. Specific references were made to §§ 1981 and 1983, but, significantly, no notice appears to have been taken of § 1985. See case below, 584 F. 2d 1235, 1252 n. 86.

tion: arbitration under a collective-bargaining agreement, and litigation under Title VII. As the Court pointed out:

> "In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence. And certainly no inconsistency results from permitting both rights to be enforced in their respectively appropriate forums." *Id.*, at 49–50.

This case, by contrast, does not involve two "independent" rights, and for the same basic reasons that underlay the Court's decision in *Brown* v. *GSA, supra,* reinforced by the other considerations discussed in this opinion, we conclude that § 1985 (3) may not be invoked to redress violations of Title VII. It is true that a § 1985 (3) remedy would not be coextensive with Title VII, since a plaintiff in an action under § 1985 (3) must prove both a conspiracy and a group animus that Title VII does not require. While this incomplete congruity would limit the damage that would be done to Title VII, it would not eliminate it. Unimpaired effectiveness can be given to the plan put together by Congress in Title VII only by holding that deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985 (3).

Accordingly, the judgment of the Court of Appeals is vacated, and the case is remanded to that court for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE POWELL, concurring.

I agree with the opinion of the Court as far as it goes, and I join it. I also agree with the views expressed by MR. JUSTICE STEVENS' concurring opinion. I write separately because

it seems to me that the Court's decision affords unnecessarily limited guidance to courts in the federal system.

The Court's specific holding is that 42 U. S. C. § 1985 (3) (1976 ed., Supp. II) may not be invoked to redress violations of Title VII. The broader issue argued to us in this case was whether this Civil War Era remedial statute, providing no substantive rights itself, was intended to provide a remedy generally for the violation of subsequently created statutory rights. For essentially the reasons suggested by MR. JUSTICE STEVENS, I would hold that § 1985 (3) should not be so construed, and that its reach is limited to conspiracies to violate those fundamental rights derived from the Constitution.

The Court's unanimous decision in *Griffin* v. *Breckenridge*, 403 U. S. 88 (1971), is to this effect. The alleged conspiracy there was an attempt by white citizens, resorting to force and violence, to deprive Negro citizens of the right to use interstate highways. In sustaining a cause of action under § 1985 (3), the Court found that the alleged conspiracy—if implemented—would violate the constitutional "right of interstate travel" as well as the right of Negro citizens to be free from "invidiously discriminatory" action. The Court declared:

> "That the statute was meant to reach private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others. For, though the supporters of the legislation insisted on coverage of private conspiracies, they were equally emphatic that they did not believe, in the words of Representative Cook, 'that Congress has a right to punish an assault and battery when committed by two or more persons within a State.' [Cong. Globe, 42d Cong., 1st Sess., 485 (1871).] The constitutional shoals that would lie in the path of interpreting § 1985 (3) as a general federal tort law can be avoided by giving full effect to the congressional purpose—by requiring, as an element of the cause of action, the kind of invidiously

discriminatory motivation stressed by the sponsors of the limiting amendment. See the remarks of Representatives Willard and Shellabarger, quoted *supra,* at 100. The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all." 403 U. S., at 101–102.

In reaching its conclusion, the Court identified "two constitutional sources" (*id.,* at 107) relied upon to support a cause of action under § 1985 (3):

"We can only conclude that Congress was wholly within its powers under § 2 of the Thirteenth Amendment in creating a statutory cause of action for Negro citizens who have been the victims of conspiratorial, racially discriminatory private action aimed at depriving them of the basic rights that the law secures to all free men.

.        .        .        .        .

"Our cases have firmly established that the right of interstate travel is constitutionally protected, does not necessarily rest on the Fourteenth Amendment, and is assertable against private as well as governmental interference. [Citations omitted.] The 'right to pass freely from State to State' has been explicitly recognized as 'among the rights and privileges of National citizenship.' *Twining* v. *New Jersey,* 211 U. S. 78, 97. That right, like other rights of national citizenship, is within the power of Congress to protect by appropriate legislation." *Id.,* at 105–106.

By contrast, this Court has never held that the right to any particular private employment is a "right of national citizenship," or derives from any other right created by the Constitution. Indeed, even Congress, in the exercise of its

powers under the Commerce Clause of the Constitution, has accorded less than full protection to private employees. It excluded several classes of employers from the coverage of Title VII, for example, employers of fewer than 15 employees. See 42 U. S. C. § 2000e (b). Nor does the Constitution create any right to be free of gender-based discrimination perpetuated solely through private action.

The rationale of *Griffin* accords with the purpose, history, and common understanding of this Civil War Era statute. Rather than leave federal courts in any doubt as to the scope of actions under § 1985 (3), I would explicitly reaffirm the constitutional basis of *Griffin*.*

MR. JUSTICE STEVENS, concurring.

While I join the Court's opinion, including its reliance on *Brown* v. *GSA*, 425 U. S. 820, and while I agree with much of MR. JUSTICE POWELL's concurrence, I add a few words of my own to explain why I would reach the same conclusion even if the Court had agreed with my dissenting views in *Brown*.

Sections 1983 and 1985 (3) of Title 42 of the United States Code (1976 ed., and Supp. II) are the surviving direct descendants of §§ 1 and 2 of the Civil Rights Act of 1871. 17 Stat. 13. Neither of these sections created any substantive rights. Earlier this Term we squarely held that § 1983

---

*The doubts which will remain after the Court's decision are far from insubstantial. At least one federal court, for example, has held that although Title VII rights may not be asserted through § 1985 (3), claims based on § 3 of the Equal Pay Act of 1963, 77 Stat. 56, 29 U. S. C. § 206 (d), may be raised in a § 1985 (3) suit. *Hodgin* v. *Jefferson*, 447 F. Supp. 804, 808 (Md. 1978). See also *Murphy* v. *Operating Engineers, Local 18*, 99 LRRM 2074, 2124–2126 (ND Ohio 1978) (conspiracy to violate Labor-Management Reporting and Disclosure Act cognizable under § 1985 (3)); *Local No. 1, ACA* v. *International Brotherhood of Teamsters*, 419 F. Supp. 263, 276 (ED Pa. 1976) (same). I would take advantage of the present opportunity to make clear that this Civil War Era statute was intended to provide a remedy *only* for conspiracies to violate fundamental rights derived from the Constitution.

382

merely provides a remedy for certain violations of certain federal rights,[1] and today the Court unequivocally holds that § 1985 (3) "provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates." *Ante,* at 372.[2]

Somewhat different language was used by Congress in describing the substantive rights encompassed within the two provisions: § 1 of the 1871 Act, the predecessor to § 1983, referred to "rights, privileges, or immunities secured by the Constitution of the United States," whereas § 2, the predecessor to § 1985 (3), referred to "equal protection of the laws" and "equal privileges and immunities under the laws."[3] The

---

[1] "Standing alone, § 1983 clearly provides no protection for civil rights since, as we have just concluded, § 1983 does not provide any substantive rights at all." *Chapman* v. *Houston Welfare Rights Org.,* 441 U. S. 600, 618.

In that opinion we quoted Senator Edmunds' comment in the 1871 debate:

"All civil suits, as every lawyer understands, which this act authorizes, are not based upon it; they are based upon the right of the citizen. The act only gives a remedy." Cong. Globe, 42d Cong., 1st Sess., 568 (1871).

[2] And *ante,* at 376, the Court states:

"Section 1985 (3), by contrast, *creates* no rights. It is a purely remedial statute, providing a civil cause of action when some otherwise defined federal right—to equal protection of the laws or equal privileges and immunities under the laws—is breached by a conspiracy in the manner defined by the section."

[3] In its present form, 42 U. S. C. § 1983 refers to deprivations of "rights, privileges, or immunities secured by the Constitution and laws." The "and laws" language was not included in the original statute enacted in 1871, however; it was added in 1874 when Congress enacted the Revised Statutes of the United States. Rev. Stat. § 1979. No similar change was ever made in § 2 of the 1871 Act, the predecessor to § 1985 (3). As originally introduced, that section did provide for criminal and civil actions for deprivations of "rights, privileges, or immunities . . . under the Constitution *and laws* of the United States." Cong. Globe, 42d Cong., 1st Sess., App. 68 (1871) (emphasis added). "The enormous sweep of the

import of the language, however, as well as the relevant legislative history, suggests that the Congress which enacted both provisions was concerned with providing federal remedies for deprivations of rights protected by the Constitution and, in particular, the newly ratified Fourteenth Amendment. If a violation was effected "under color of any law, statute, ordinance, regulation, custom, or usage of any State," § 1983 afforded redress; if a violation was caused by private persons who "conspire or go in disguise on the highway," § 1985 (3) afforded redress. Thus, the former authorized a remedy for state action depriving an individual of his constitutional rights, the latter for private action.

Some privileges and immunities of citizenship, such as the right to engage in interstate travel and the right to be free of the badges of slavery, are protected by the Constitution against interference by private action, as well as impairment by state action. Private conspiracies to deprive individuals of these rights are, as this Court held in *Griffin* v. *Breckenridge*, 403 U. S. 88, actionable under § 1985 (3) without regard to any state involvement.[4]

---

original language led to pressures for amendment," *Griffin* v. *Breckenridge*, 403 U. S. 88, 100, and the present language was substituted. The criminal provisions of § 2 were later declared unconstitutional, *United States* v. *Harris*, 106 U. S. 629, and repealed by Congress. 35 Stat. 1088, 1154. This criminal provision should be distinguished from 18 U. S. C. § 241, relied upon by MR. JUSTICE WHITE, see *post*, at 389 n. 5. Section 241 has, since its enactment in 1870, referred explicitly to "the Constitution *or laws* of the United States." See 16 Stat. 141 (emphasis added).

[4] In *Griffin, supra*, at 105, the Court quoted the statement from the *Civil Rights Cases*, 109 U. S. 3, 20, that the Thirteenth Amendment "is not a mere prohibition of State laws establishing or upholding slavery, but an absolute declaration that slavery or involuntary servitude shall not exist in any part of the United States." The opinion added:

"We can only conclude that Congress was wholly within its powers under § 2 of the Thirteenth Amendment in creating a statutory cause of action for Negro citizens who have been the victims of conspiratorial, racially

Other privileges and immunities of citizenship such as the right to due process of law and the right to the equal protection of the laws are protected by the Constitution only against state action. *Shelley* v. *Kraemer,* 334 U. S. 1, 13. If a state agency arbitrarily refuses to serve a class of persons—Chinese-Americans, for example, see *Yick Wo* v. *Hopkins,* 118 U. S. 356—it violates the Fourteenth Amendment. Or if private persons take conspiratorial action that prevents or hinders the constituted authorities of any State from giving or securing equal treatment, the private persons would cause those authorities to violate the Fourteenth Amendment; the private persons would then have violated § 1985 (3).[5]

If, however, private persons engage in purely private acts of discrimination—for example, if they discriminate against women or against lawyers with a criminal practice, see *Dombrowski* v. *Dowling,* 459 F. 2d 190, 194–196—they do not violate the Equal Protection Clause of the Fourteenth Amendment.[6] The rights secured by the Equal Protection and Due Process Clauses of the Fourteenth Amendment are rights to protection against unequal or unfair treatment by the State, not by private parties. Thus, while § 1985 (3) does not require that a defendant act under color of state law, there still

discriminatory private action aimed at depriving them of the basic rights that the law secures to all free men." 403 U. S., at 105.

With respect to the right of interstate travel, the opinion added:

"Our cases have firmly established that the right of interstate travel is constitutionally protected, does not necessarily rest on the Fourteenth Amendment, and is assertible against private as well as governmental interference." *Ibid.*

[5] I have paraphrased the statutory language "preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws" because that language sheds important light on the meaning of the entire section.

[6] As the Court stated in *Shelley* v. *Kraemer,* 334 U. S. 1, 13, the Fourteenth Amendment "erects no shield against merely private conduct, however discriminatory or wrongful."

can be no claim for relief based on a violation of the Fourteenth Amendment if there has been no involvement by the State. The requirement of state action, in this context, is no more than a requirement that there be a constitutional violation.

Here, there is no claim of such a violation. Private discrimination on the basis of sex is not prohibited by the Constitution. The right to be free of sex discrimination by other private parties is a statutory right that was created almost a century after § 1985 (3) was enacted. Because I do not believe that statute was intended to provide a remedy for the violation of statutory rights—let alone rights created by statutes that had not yet been enacted—I agree with the Court's conclusion that it does not provide respondent with redress for injuries caused by private conspiracies to discriminate on the basis of sex.[7]

With this additional explanation of my views, I join the Court's opinion.

MR. JUSTICE WHITE, with whom MR. JUSTICE BRENNAN and MR. JUSTICE MARSHALL join, dissenting.

The Court today releases employers acting with invidious discriminatory animus in concert with others from liability under 42 U. S. C. § 1985 (3) (1976 ed., Supp. II) for the in-

---

[7] Unlike the problem presented by *Runyon* v. *McCrary*, 427 U. S. 160, where I concluded that it was my duty to follow decisions of this Court which in my judgment had erroneously construed the actual intent of Congress, this is a case in which I am free to respect my understanding of congressional intent. To do so does not require me to advocate overruling any prior decisions of this Court in favor of a position which would appear to be "a significant step backwards . . . clearly contrary to my understanding of the mores of today." *Id.*, at 191–192 (STEVENS, J., concurring). And with respect to the issue which is presented in this case, there is no doubt in my mind that the construction of the statute adopted by the Court of Appeals "would have amazed the legislators who voted for it." *Id.*, at 89.

juries they inflict.  Because for both respondent in this case and as a general matter § 1985 (3) is an entirely consistent supplement to Title VII, I dissent.

I

Respondent sought compensatory damages under § 1985 (3) [1] on the ground that he had been injured by acts done in furtherance of a conspiracy for the purpose of depriving others of "equal privileges and immunities" guaranteed in § 703 (a) of Title VII,[2] which prohibits discrimination on the basis of, *inter alia,* sex.  Additionally, and separately, respondent sought relief under Title VII itself on the ground that he had been deprived of his right under § 704 (a) of Title VII [3] not to be discriminated against because he assisted

---

[1] Title 42 U. S. C. § 1985 (3) (1976 ed., Supp. II) provides in relevant part that when persons who "conspire . . . for the purpose of depriving . . . any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury . . . , against any one or more of the conspirators."

[2] 42 U. S. C. § 2000e–2 (a).  This statute provides:

"It shall be an unlawful employment practice for an employer—

"(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

"(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

[3] 42 U. S. C. § 2000e–3 (a).  This statute provides:

"It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor orga-

others in asserting their Title VII rights. Petitioners have not sought review of the Court of Appeals' holding that respondent had stated a cause of action under § 704 (a), and, accordingly, the Court does not address that issue. However, the majority holds that the claim under § 1985 (3) must be dismissed because "deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985 (3)," *ante*, at 378.

Unfortunately, the majority does not explain whether the "right created by Title VII" to which it refers is the right guaranteed to women employees under § 703 (a) or the right guaranteed to respondent under § 704 (a). Although in stating its view of the issue before the Court, the majority intimates that it is relying on the fact that respondent has a claim directly under § 704 (a),[4] the reasoning of the majority opinion in no way indicates why the existence of a § 704 (a) claim should prevent respondent from seeking to vindicate under § 1985 (3) the entirely separate right provided by § 703 (a).

Clearly, respondent's right under § 704 (a)—to be free from retaliation for efforts to aid others asserting Title VII rights— is distinct from the Title VII right implicated in his claim under § 1985 (3), which is the right of women employees not to be discriminated against on the basis of their sex. More-

---

nization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

[4] See *ante*, at 372 ("The primary question in the present case, therefore, is whether a person injured by a conspiracy to violate § 704 (a) of Title VII of the Civil Rights Act of 1964 is deprived of 'the equal protection of the laws, or of equal privileges and immunities under the laws' within the meaning of § 1985 (3)"). See also *ante*, at 377 ("The only question here, therefore, is whether [the right Novotny claims under § 704 (a)] may be asserted within the remedial framework of § 1985 (3)"). (Emphasis deleted.)

over, that respondent in this case is in a position to assert claims under both § 1985 (3) and § 704 (a) is due solely to the peculiar facts of this case, rather than to any necessary relationship between the two provisions. First, it is of course possible that a person could be injured in the course of a conspiracy to deny § 703 (a) rights—as respondent claims under his § 1985 (3) cause of action—by some means other than retaliatory discrimination prohibited under § 704 (a). Second, § 704 (a) itself protects only employees and applicants for employment; others, such as customers or suppliers, retaliated against in the course of a conspiracy to violate § 703 (a) are not expressly protected under any provision of Title VII. Indeed, if respondent in this case had been only a director, rather than both a director and an employee, of the Great American Federal Savings and Loan Association, he apparently would not be able to assert a claim under § 704 (a).

Because the existence of a § 704 (a) claim is due entirely to the peculiar facts of this case, I interpret the majority's broad holding that "deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985 (3)" to preclude respondent from suing under § 1985 (3) not because he coincidentally has a § 704 (a) claim, but because the purpose of the conspiracy allegedly resulting in injury to him was to deny § 703 (a) rights.

## II

The pervasive and essential flaw in the majority's approach to reconciliation of § 1985 (3) and Title VII proceeds from its characterization of the former statute as solely a "remedial" provision. It is true that the words "equal privileges and immunities under the laws" in § 1985 (3) refer to substantive rights created or guaranteed by other federal law, be it the Constitution or federal statutes other than § 1985 (3); [5] and

---

[5] The majority opinion does not reach the issue whether § 1985 (3) encompasses federal statutory rights other than those proceeding in "fundamental" fashion from the Constitution itself. I am not certain in what

in this case it is a conspiracy to deny a substantive right created in § 703 (a) of Title VII [6] that is part of the basis for respondent's suit under § 1985 (3).[7]   However, § 1985 (3),

manner the Court conceives of sex discrimination by private parties to proceed from explicit constitutional guarantees.   In any event, I need not pursue this issue because I think it clear that § 1985 (3) encompasses all rights guaranteed in federal statutes as well as rights guaranteed directly by the Constitution.   As originally introduced, § 2 of the Civil Rights Act of 1871, 17 Stat. 13, encompassed "rights, privileges, or immunities . . . under the Constitution and laws of the United States."   Cong. Globe, 42d Cong., 1st Sess., App. 68 (1871).   The substitution of the terms "the equal protection of the laws" and "equal privileges and immunities under the laws," see n. 1, *supra,* did not limit the scope of the rights protected but added a requirement of certain "class-based, invidiously discriminatory animus behind the conspirators' action," *Griffin* v. *Breckenridge,* 403 U. S. 88, 102 (1971).   We have repeatedly held that 18 U. S. C. § 241 (derived from § 6 of the Civil Rights Act of 1870, 16 Stat. 141), which is the "closest remaining criminal analogue to § 1985 (3)," *Griffin* v. *Breckenridge, supra,* at 98, encompasses all federal statutory rights.   See *United States* v. *Waddell,* 112 U. S. 76 (1884); *In re Quarles,* 158 U. S. 532 (1895); *United States* v. *Mosley,* 238 U. S. 383, 387–388 (1915); *United States* v. *Price,* 383 U. S. 787, 800 (1966); *United States* v. *Johnson,* 390 U. S. 563, 565–566 (1968).   Similarly, we have stated that 42 U. S. C. § 1983, derived from § 1 of the 1871 Civil Rights Act, encompasses federal statutory as well as constitutional rights.   *Edelman* v. *Jordan,* 415 U. S. 651, 675 (1974); *Rosado* v. *Wyman,* 397 U. S. 397 (1970).   See generally *Chapman* v. *Houston Welfare Rights Organization,* 441 U. S. 600, 646 (1979) (WHITE, J., concurring in judgment).

  [6] Although *Griffin* v. *Breckenridge, supra,* at 102 n. 9, did not reach the issue whether discrimination on a basis other than race may be vindicated under § 1985 (3), the Court correctly assumes that the answer to this question is "Yes."   The statute broadly refers to all privileges and immunities, without any limitation as to the class of persons to whom these rights may be granted.   It is clear that sex discrimination may be sufficiently invidious to come within the prohibition of § 1985 (3), see *infra,* at 392.   See generally *Califano* v. *Goldfarb,* 430 U. S. 199 (1977); *Reed* v. *Reed,* 404 U. S. 71 (1971); *Mathews* v. *Lucas,* 427 U. S. 495, 506 (1976).

  [7] This is analogous to *United States* v. *Johnson, supra,* where the basis for a prosecution under 18 U. S. C. § 241 was a conspiracy to deny the substantive right to equality in public accommodations guaranteed under Title II of the Civil Rights Act of 1964, 42 U. S. C. § 2000a.

unlike a remedial statute such as 42 U. S. C. § 1983,[8] does not merely provide a cause of action for persons deprived of rights elsewhere guaranteed. Because § 1985 (3) provides a remedy for *any person* injured as a result of deprivation of a substantive federal right, it must be seen as itself creating rights in persons other than those to whom the underlying federal right extends.

In this case, for instance, respondent is seeking to redress an injury inflicted upon *him,* which injury is distinct and separate from the injury inflicted upon the female employees whose § 703 (a) rights were allegedly denied. The damages available to a person such as respondent suing under § 1985 (3) are not dependent upon the amount of injury caused persons deprived of "equal privileges and immunities under the laws," but upon the gravity of the separate injury inflicted upon the person suing. Cf. *Sullivan* v. *Little Hunting Park,* 396 U. S. 229, 254–255 (1969) (Harlan, J., dissenting).

In this circumstance—where the § 1985 (3) plaintiff is seeking redress for injury caused as a result of the denial of other persons' Title VII rights—it makes no sense to hold that the remedies provided in Title VII are exclusive, for such a § 1985 (3) plaintiff has no Title VII remedy.[9] It thus can hardly be asserted that allowing this § 1985 (3) plaintiff to seek redress of his injury would allow such individual to "completely bypass" the administrative and other "detailed and specific" enforcement mechanisms provided in Title VII, *ante,* at 375–376.

In enacting § 1985 (3), Congress specifically contemplated that persons injured by private conspiracies to deny the fed-

---

[8] See *Chapman* v. *Houston Welfare Rights Organization,* 441 U. S., at 602; *id.,* at 623 (POWELL, J., concurring); *id.,* at 646 (WHITE, J., concurring in judgment); *id.,* at 672 (STEWART, J., dissenting).

[9] Section 706 (b) of Title VII, 42 U. S. C. § 2000e–5 (b), contemplates suit only "on or behalf of . . . person[s] . . . aggrieved" under § 703 or § 704.

eral rights of others could redress their injuries, quite apart from any redress by those who are the object of the conspiracy. *Griffin* v. *Breckenridge,* 403 U. S. 88, 103 (1971). Nothing in the Court's opinion suggests any warrant for refusal to recognize this cause of action simply because Title VII rights are involved.

### III

I am also convinced that persons whose own Title VII rights have allegedly been violated retain the separate right to seek redress under § 1985 (3). In seeking to accommodate the civil rights statutes enacted in the decade after the Civil War and the civil rights statutes of the recent era, the Court has recognized that the later statutes cannot be said to have impliedly repealed the earlier unless there is an irreconcilable conflict between them. *Runyon* v. *McCrary,* 427 U. S. 160, 173 n. 10 (1976). See *Johnson* v. *Railway Express Agency,* 421 U. S. 454, 457–461 (1975); *Sullivan* v. *Little Hunting Park, supra,* at 237–238. Cf. *United States* v. *Johnson,* 390 U. S. 563 (1968). Of course, the mere fact of overlap in modes of redressing discrimination does not constitute such irreconcilable conflict. See, *e. g., Alexander* v. *Gardner-Denver Co.,* 415 U. S. 36 (1974); *Jones* v. *Alfred H. Mayer Co.,* 392 U. S. 409 (1968), and cases cited above. Indeed, we have embraced the notion of an implied repeal only when "[i]t would require the suspension of disbelief to ascribe to Congress the design" to allow vindication under a Reconstruction statute of a right also subject to redress under one of the modern Civil Rights Acts. *Brown* v. *GSA,* 425 U. S. 820, 833 (1976).

It is clear that such overlap as may exist between Title VII and § 1985 (3) occurs only because the latter is directed at a discrete and particularly disfavored form of discrimination, and examination of § 1985 (3) shows that it constitutes a compatible and important supplement to the more general prohibition and remedy provided in Title VII. Thus, while it may be that in many cases persons seeking redress under

§ 1985 (3) also have a claim directly under Title VII,[10] this is not sufficient reason to deprive those persons of the right to sue for the compensatory and punitive damages to which they are entitled under the post-Civil War statute.[11]

As previously indicated, the majority's willingness to infer a silent repeal of § 1985 (3) is based on its view that the provision only gives a remedy to redress deprivations prohibited by other federal law. But this narrow view of § 1985 (3) is incorrect even as to § 1985 (3) plaintiffs themselves denied Title VII rights. Because only conspiracies to deprive persons of federal rights are subject to redress under § 1985 (3), that statute, like 18 U. S. C. § 241,[12] is itself a prohibition separate and apart from the prohibitions stated in the underlying provisions of federal law. Moreover, only those deprivations imbued with "invidiously discriminatory motivation" amounting to "class-based . . . animus," *Griffin* v. *Breckenridge, supra,* at 102, are encompassed by § 1985 (3). Viewed in this manner, the right guaranteed by § 1985 (3) is the right not to be subjected to an invidious conspiracy to deny other federal rights. This discrete category of deprivations to which § 1985 (3) is directed stands in sharp contrast to the broad prohibition on discrimination provided in § 703 (a) of Title VII, see n. 2, *supra; Griggs* v. *Duke Power Co.,* 401 U. S. 424 (1971). If, as the majority suggests, it would not recognize an implied repeal of an earlier statute granting a separate but overlapping right, then it should not do so in this case; for respondent has alleged a violation of § 703 (a) in a manner independently prohibited by § 1985 (3), and under the

---

[10] It is, of course, theoretically possible that an individual could be injured by a conspiracy to violate his Title VII rights even though that conspiracy was never brought to fruition and thus there was no violation of Title VII itself.

[11] Title VII authorizes only equitable relief, including backpay for a period not to exceed two years. See § 706 (g), 42 U. S. C. § 2000e–5 (g).

[12] See nn. 5, 7, *supra.*

majority's approach should be allowed to redress *both* deprivations.

Even to the extent that § 1985 (3) is properly characterized as a "remedial" statute, there is no reason for holding it inapplicable to redress deprivations of Title VII rights. The majority's apparent assumption that this Court has greater freedom in inferring repeal of remedial statutes than it does of statutes guaranteeing substantive rights has no support in our previous cases. The one instance in which we held Title VII's remedies to be exclusive, *Brown* v. *GSA, supra,* was required because of the unmistakable legislative intent that alternative modes of redress were not to be available for a grievance relating to discrimination in federal employment.[13] Nor has the majority's right/remedy distinction been enunciated in any of our cases recognizing that Congress did not intend Title VII to pre-empt all "alternative means to redress individual grievances," *Runyon* v. *McCrary, supra,* at 174 n. 11, quoting 118 Cong. Rec. 3371 (1972) (Sen. Wil-

---

[13] The Court asserts, *ante,* at 378, that its holding is required for "the same basic reasons that underlay the Court's decision in *Brown* v. *GSA,*" as reinforced by the consideration that § 1985 (3) is assertedly purely remedial. But the majority opinion utterly fails to explain in what way the basis for the decision in *Brown*—clear congressional intent—is applicable in this case. *Brown* concerned the peculiar legislative context in which the extension of Title VII to federal employment was enacted, stressing that Congress was under the impression that there was at that time (1972) no other effective judicial remedy for federal discriminatory action. By contrast, this case concerns private discrimination which, of course, has been encompassed by Title VII since the original enactment of the Civil Rights Act in 1964. *Brown* expressly reaffirmed the conclusion of our previous cases that with respect to private employment, "the explicit legislative history of the 1964 Act . . . 'manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes,'" *Brown* v. *GSA,* 425 U. S., at 833, quoting *Johnson* v. *Railway Express Agency,* 421 U. S. 454, 459 (1975); *Alexander* v. *Gardner-Denver Co.,* 415 U. S. 36, 48 (1974).

liams).[14]  With respect to remedies as well as with respect to substantive rights, an implied repeal of post-Civil War civil rights legislation occurs only when the legislative scheme of the new statute is incompatible with the old.

In this case, Title VII and the remedial aspect of § 1985 (3) are entirely consistent, the latter clearly supplementing the former.  Title VII operates both to create new federal rights and to provide a general remedy for the denial thereof, while § 1985 (3) operates to provide a separate remedy when the manner of denial is especially invidious and threatening.[15] The Reconstruction Congress that enacted § 1985 (3) believed that an especial danger was posed by persons acting with invidious animus and acting in concert—thereby compounding their power and resources [16]—to deny federal rights.  Because such private conspiratorial action, the paradigm of which was the activity of the Ku Klux Klan, constituted a serious threat to civil rights and civil order,[17] it was deemed necessary to "giv[e] a civil action to anybody who shall be injured by [such] conspiracy." [18]  Thus, though it may be that those

---

[14] See cases cited in n. 13, *supra; Runyon* v. *McCrary,* 427 U. S., at 174–175.

[15] Because § 1985 (3) refers to all federal rights, it is irrelevant that the particular right sought to be vindicated thereunder was not in existence at the time the cause of action was enacted.  Cf. *Hagans* v. *Lavine,* 415 U. S. 528 (1974); *Rosado* v. *Wyman,* 397 U. S. 397 (1970) (cause of action under § 1983 to vindicate right under subsequently enacted statute); *United States* v. *Johnson,* 390 U. S. 563 (1968) (prosecution under 18 U. S. C. § 241 for violation of subsequently enacted statute); see also *United States* v. *Waddell,* 112 U. S. 76 (1884).

[16] Cf. *Callanan* v. *United States,* 364 U. S. 587, 593–594 (1961); *Krulewitch* v. *United States,* 336 U. S. 440, 448–449 (1949) (Jackson, J., concurring); *Pinkerton* v. *United States,* 328 U. S. 640, 654 (1946).

[17] See *Monell* v. *New York City Dept. of Social Services,* 436 U. S. 658, 665, and n. 11 (1978); *Griffin* v. *Breckenridge,* 403 U. S., at 99–102.

[18] Cong. Globe, 42d Cong., 1st Sess., 568 (1871) (Sen. Edmunds).  The passage from which this remark is excerpted is also instructive:

"The second section, it will be observed, only provides for the punish-

who conspire with invidious motivation to violate § 703 (a) may in many cases also be reached under Title VII itself, there is no basis for inferring a silent repeal [19] of the legislative judgment that the distinct nature of the deprivation to which § 1985 (3) is directed warrants separate and more complete relief, and, accordingly, the Court has an obligation to honor the terms of that statute.[20]

---

ment of a conspiracy. It does not provide for the punishment of any act done in pursuance of the conspiracy, but only a conspiracy to deprive citizens of the United States, in the various ways named, of the rights which the Constitution and the laws of the United States made pursuant to it give to them; that is to say, conspiracies to overthrow the Government, conspiracies to impede the course of justice, conspiracies to deprive people of the equal protection of the laws, whatever those laws may be. It does not provide, as I say, for any punishment for any act which these conspirators shall do in furtherance of the conspiracy. It punishes the conspiracy alone, leaving the States, if they see fit, to punish the acts and crimes which may be committed in pursuance of the conspiracy. I confess that I thought myself it was desirable, to make the bill complete, to make it completely logical and completely effective, that a section should have been added providing not only for punishing the conspiracy, but providing also in the same way for punishing any act done in pursuance of the conspiracy. This section gives a civil action to anybody who shall be injured by the conspiracy, but does not punish an act done as a crime." *Ibid.*

[19] The majority recognizes that Congress has explicitly noted that Title VII does not pre-empt redress of grievances under 42 U. S. C. § 1981 and 42 U. S. C. § 1983, *ante*, at 377 n. 21. See H. R. Rep. No. 92–238, p. 19 (June 2, 1971); S. Rep. No. 92–415, p. 24 (Oct. 28, 1971). This Court did not resurrect § 1985 (3), *Griffin* v. *Breckenridge, supra* (June 7, 1971), from its interment under *Collins* v. *Hardyman*, 341 U. S. 651 (1951), until one week after the House Report was filed; neither Report mentions § 1985 (3), nor does the Senate Report mention *Griffin*.

[20] Petitioners argue that neither the Thirteenth Amendment, the Fourteenth Amendment, nor the Commerce Clause grants Congress authority to reach private conspiracies to deny Title VII rights such as are involved in this case. But petitioners do not dispute that the Commerce Clause is the source of authority for the enactment of Title VII, and Congress needs no additional grant of authority to prohibit, and provide a remedy for, invidious conspiracies to deny such rights.

Because respondent exhausted his administrative remedies under Title VII, see *ante,* at 369, there is no need in this case to reach the question whether persons whose Title VII rights have been violated may bring suit directly in federal court alleging an invidious conspiracy to deny those Title VII rights. I note, however, that the majority's desire not to undercut the administrative enforcement scheme, including the encouragement of voluntary conciliation, provided by Title VII would be completely fulfilled by insisting that § 1985 (3) plaintiffs exhaust whatever Title VII remedies they may have. The concerns expressed in the majority opinion do not provide a basis for precluding redress altogether under § 1985 (3).