829 F.2d 39
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ronaldo P. RODRIGUES, Plaintiff-Appellant,
v.
MARTIN MARIETTA CORPORATION, MASTER BUILDERS DIVISION, et
al., Defendant-Appellee.
 No. 86-3403
 United States Court of Appeals, Sixth Circuit.
 September 16, 1987.
 
 Before BOYCE F. MARTIN, Jr., DAVID A. NELSON and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 This case involves the effort by Ronaldo Rodrigues, a Brazilian national employed, and later laid off, in Brazil, by a Brazilian subsidiary of a United States corporation, to come within the protections of United States law to attack his firing and denial of certain fringe benefits as employment discrimination. Because we find these efforts unavailing, we affirm the opinion of the District Court granting summary judgment against his cause of action.
 
 
 2
 * Rodrigues was hired by Martin Marietta in October 1975, with the clear understanding that he would become an employee of Martin Marietta's Brazilian subsidiary, Rioquima, S.A., and that his employment would be entirely outside of the United States under the auspices of a foreign company. Rodrigues was, however, given training for nine months on the payroll of Martin Marietta's Ohio subsidiary, Master Builders. At the end of this time, his employment with the domestic company was terminated, and he began immediately with the Brazilian company. In 1984, Rodrigues was fired because of lagging sales. After Various proceedings in Brazil, Rodrigues's claim against the Brazilian company was settled for $18,000. He then began an action in federal court here for employment discrimination based on his failure to receive the same benefits as United States citizens employed in Brazil. Rodrigues pursues this claim under a number of different theories, which must be analyzed separately. These theories include Title VII of the Civil Rights Act, 42 U.S.C. Sec. 1981, 42 U.S.C. Sec. 1985(3), Ohio state law, and ERISA. Although Rodrigues attempts to label his claim discrimination on the basis of national origin, the reason he did not receive the same benefits as would a United States citizen during employment in Brazil was that he was a Brazilian citizen and not the fact that he was born in Brazil. He is thus complaining of discrimination on the basis of alienage rather than national origin.
 
 II
 
 3
 The Title VII claim is essentially defeated by 42 U.S.C. Sec. 2000e-1, Which states that this part of the act does not apply 'with respect to the employment of aliens outside any State . ...' As Rodrigues was an alien employed in Brazil, he has no claim under Title VII. He attempts to evade this barrier by claiming that the discrimination occurred, or his rights attached, at the time he was employed in Ohio. Even had he been a United States citizen, he would have been terminated by the Ohio corporation upon completion of training and re-employed by the Brazilian company on commencing work there. Thus, there was no discrimination while employed in Ohio. Further, even if there were discrimination in Ohio, it would have been on the basis of alienage, which is not barred by Title VII. 42 U.S.C. Sec. 2000e-7(a)(1); Espinoza v. Farah Manufacturing, 414 U.S. 86, 95 (1973). To the extent aliens in the United States are under the protection of Title VII, it is only with regard to discrimination based on race, color, religion, sex or national origin. Rodrigues makes no claim that he would have been treated as he was, were he a United States citizen of Brazilian origin, and thus even this narrow ground is not available to him.
 
 III
 
 4
 Rodrigues cannot state a claim under Section 1985(3), which provides a private damages action against persons conspiring to deprive another person of any right or privilege of a citizen of the United States. Section 1985(3) does not create any substantive rights itself, but merely provides a private remedy for a violation of civil rights secured by the Constitution or federal statutes. Great American Federal Savings & Loan Association v. Novotny, 442 U.S. 366, 372 (1979). As this opinion makes clear, Rodrigues cannot establish a violation of any federal right. He thus has no basis for claiming a remedy under section 1985(3).
 
 IV
 
 5
 The Ohio state law claims, based on violation of Ohio Rev. Code Sec. 4112.02 forbidding national origin discrimination, encounter two obstacles. The first is that there is no private right of action absent a filing with the Ohio Civil Rights Commission. Dadas v. Prescott, Ball and Turben, 529 F.Supp. 203 (N.D. Ohio 1981). The second is that the law shows no indication that it is meant to apply outside the United States, and the general rule of construction is that such coverage is not to be presumed, unless clearly indicated. Restatement (Second) of Foreign Relations Law of the United States Sec. 38 (1965).
 
 V
 
 6
 The claim under ERISA also encounters two obstacles. First, Rodrigues was not a participant in any pension plan subject to ERISA. He was in a Brazilian pension plan, and his rights there had not yet vested. To the extent that his claim is that he should have been in a domestic plan, he simply has an employment discrimination claim, and ERISA extends no protections not afforded by Title VII. The district court correctly recognized that the anti-discrimination provision of ERISA does not apply to discrimination on the basis of race, national origin, or alienage, but only to discrimination against employees pursuing pension rights. 29 U.S.C. Sec. 1140. Rodrigues makes no claim of discrimination of this sort.
 
 VI
 
 7
 Rodrigues's claim under 42 U.S.C. Sec. 1981 is the only one with even arguable merit. 42 U.S.C. Sec. 1981 states that all persons within the jurisdiction of the United States shall have the same right to make contracts as is enjoyed by white citizens. Section 1981 has been held to provide protection against discrimination on the basis of alienage. The Supreme Court has struck down state laws prohibiting aliens from obtaining fishing licenses, Takahashi v. Fish and Game Commission, 334 U.S. 410 (1948), and welfare benefits, Graham v. Richardson, 403 U.S. 365 (1971), on the basis that section 1981 guarantees lawfully admitted resident aliens 'the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.' Since Runyon v. McCrary, 427 U.S. 160 (1976), the right to make contracts has included, at least on the part of purchasers of school services, the right to make contracts even with unwilling parties.[1] Thus, at first blush Rodrigues makes an intriguing point as to whether his right to make a contract with the Ohio company was in some way impaired. Although the reach of section 1981 has recently been extended to certain ethnic groups in St. Francis College v. Al-Khazraji, 107 S. Ct. 2022 (1987), the Court has not considered the application of section 1981 to a claim of private employment discrimination on the basis of alienage, as opposed to race or national origin.
 
 
 8
 We need not reach this issue here. Rodrigues cannot claim protection under section 1981 because he was not within the jurisdiction of the United States at the time of the alleged discrimination, during his employment in Brazil. While he was within the jurisdiction of the United States, Rodrigues received the same employment benefits enjoyed by United States citizens under the same type of contract. Rodrigues argues that his rights under section 1981 attached at the monent of his hiring in Ohio. We do not find this argument persuasive. By its own terms, which limit protection to persons within the jurisdiction of the United States, section 1981 indicates that it is not intended to have extra-territorial effect. Regardless of where Rodrigues signed the contract with Martin Marietta, the discrimination of which he complains, the denial of certain fringe benefits, took place outside the jurisdiction of the United States. Any protection extended by section 1981 to aliens within the United States is certainly not extended to employment relationships between companies and aliens outside the borders of this country.
 
 
 9
 In the absence of any clear statutory basis for a claim, there is also a strong policy reason for rejecting claims of the type raised here by Rodrigues. United States law clearly allows different treatment of United States citizens and foreign nationals in employment abroad. If the theory advanced here should prevail, it would become much more difficult and expensive for domestic companies to offer training or experience in the United States to their foreign employees, because the full panoply of benefits offered to United States citizens working abroad could be required permanently for any foreign national who works temporarily in the United States. This would work to the detriment of the employees themselves, the companies, and international trade and economic development. In the absence of any interpretation of congressional intent that would lend credence to such a result, we believe the clear bar to the extra-territorial application of section 1981, Title VII, and other anti-discrimination laws should prevail.
 
 VII
 
 10
 The decision of the district court is AFFIRMED.
 
 
 
 [1]
 This interpretation does not appear to have been extended to sellers of services, or goods, which is the position of Rodrigues here. It has not been suggested that parents who choose a White-run private school over a Black-run school, or a Black-owned apartment over one owned by Whites, run afoul of section 1981