Mary J. LARSEN, Plaintiff,

v.

Ferris R. KIRKHAM, Individually and in his capacity as President of the L.D.S. Business College, Neal A. Maxwell, Individually and in his capacity as Commissioner of Education for the Church of Jesus Christ of Latter–Day Saints, the Corporation of the President of the Church of Jesus Christ of Latter–Day Saints, a non–profit Utah corporation, John R. Schone, Individually and in his capacity as Utah State Industrial Commissioner, Utah State Industrial Commission, a department of the government of the State of Utah, the Honorable Vernon B. Romney, in his capacity as Attorney General for the State of Utah, the Honorable Calvin L. Rampton, in his capacity as Governor of the State of Utah, Defendants.

Civ. No. C 74–287.

United States District Court,
D. Utah, C. D.

Sept. 26, 1980.

Bryce E. Roe, Roe & Fowler, Salt Lake City, Utah, for plaintiff.

Dan S. Bushnell, and David A. Westerby, Kirton & McConkie, Salt Lake City, Utah, Joseph P. McCarthy, Asst. Atty. Gen., Salt Lake City, Utah, for defendants.

## MEMORANDUM and ORDER

JENKINS, District Judge.

This case has a checkered history. Plaintiff, advancing several theories of relief, filed a complaint alleging that she had been discriminated against on the basis of her sex and her religion in connection with her employment as a teacher at the defendant L.D.S. Business College. Thereafter, the case was presented to a jury over which The Honorable Willis W. Ritter presided. At the close of trial, plaintiff's counsel stated to the court that the plaintiff had abandoned her claims surrounding the alleged sex discrimination (transcript of proceedings of March 17, 1976 at p. 206). Thereafter, the parties agreed to waive the jury and stipulated that Judge Ritter might determine the merits of the case upon the evidence and the post–trial memoranda thereafter submitted. Judge Ritter took the case under advisement but died prior to rendering a decision.

In November of 1977, the case was assigned to a visiting judge sitting by designation in the District of Utah. The parties stipulated that such judge might enter judgment on the merits on the basis of the evidence and testimony presented at trial and the arguments and memoranda of the parties. The defendants filed supplemental memoranda. Later, however, in a letter to plaintiff's counsel, the judge announced that he would take no action in the matter for the reason that it was his understanding that determination of the case required only resolution of questions of law, and that contrary to his understanding, counsel for the State of Utah had represented the existence of remaining factual issues.

The undersigned judge as successor to Chief Judge Ritter succeeded also to this case. Once again the parties stipulated that the court could make a determination as to issues involved, only this time the parties presented the court with a list of narrowly drawn legal issues, a list of stipulated facts and a request that the court determine the issues presented and set for trial any remaining issues. Once again supplemental memoranda were filed, and argument was heard. The court then took the matter under advisement.

The court elects to treat the parties' pending motions as cross–motions for summary judgment. As the age of the case eloquently demonstrates, the parties have had ample opportunity to brief the legal questions involved. As to factual questions, none that control appear in dispute. As noted above, plaintiff has abandoned her claim based upon sex discrimination. Her remaining factual allegations so far as relevant will, for the purpose of this decision, be taken as true, i. e. that the L.D.S. Business College, the Corporation of the President of the Church of Jesus Christ of Latter–Day Saints (Mormon), and individual defendant officers of each, agreed not to renew plaintiff's teaching contract at the L.D.S. Business College based upon their perception that plaintiff, although a professed Mormon, was insufficiently involved in ecclesiastical activities to justify her retention as a teacher at a church school.

In the court's view, the issues requiring resolution are (1) whether the actions of defendants give rise to a remedy under either 42 U.S.C. § 1983 or § 1985; (2) whether provisions exempting religious educational institutions from the proscriptions

of both Title VII [1] and the Utah Anti–Discrimination Act [2] are unconstitutional, and (3) whether a three–judge court need be convened to hear such claims of unconstitutionality. In view of the court's rulings as to these issues, defendants' assertion that plaintiff's claims under Title VII are barred by the statute of limitations need not be decided.

## I. *1983 CLAIM.*

Among other things, plaintiff claims that defendant's refusal to renew her employment contract–to hire her–constituted a violation of 42 U.S.C. § 1983 in that her constitutional right to free exercise of religion was thereby denied. To begin with, it is clear that she had neither tenure nor was she employed by the State of Utah. In short, there are no due process claims asserted. *See Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Requisite to a 1983 cause of action is that the alleged deprivation of rights occur *"under color"* of state law. Plaintiff concedes that the limited financial assistance which L.D.S. Business College receives from the State of Utah is insufficient to establish a nexus between the state and the defendants' alleged acts of discrimination so as to constitute "state action." However, she asserts state action is present in the form of Utah's Anti–Discrimination Act, which, in her view, encouraged the defendants to discriminate against her.

■ There is no dispute that the Utah Anti–Discrimination Act does not forbid the acts complained of here. First, the definition of "employer" contained in § 34–35–

2(5) totally excludes from the reach of the Utah Act religious organizations or their wholly–owned subsidiaries.[3] Furthermore, § 34–35–6(2)(b) specifically excludes religious schools from the Act's prohibition of religious discrimination.[4] Plaintiff recognizes that if a policy of state neutrality is expressed in statutory form, such does not necessarily tint the discriminatory acts of discriminating persons with "color" of state law. Plaintiff contends however that where a statutory expression of neutrality with respect to private discrimination has the effect of authorizing discrimination previously prohibited, it so encourages and involves the state in such private discrimination that the "state action" requirement of § 1983 is satisfied.

It is clear that § 1983 reaches some actions taken by private persons under state authority. *See, United States v. Classic*, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941); *Milonas et al. v. Williams et al.*, C 78–0352 (D.Utah 1980). It is also true that several courts, including the United States Supreme Court, have found "state action" in situations where private action receives its authority from state legislation which when enacted, changed then existing contrary state law. In *Reitman v. Mulkey*, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967), a case relied upon by plaintiff, the Supreme Court affirmed a California Supreme Court finding of "state action" in a California initiated measure enacted on a statewide ballot, which expressed a policy of neutrality as to private discrimination in residential housing and thereby repealed existing legislation prohibiting such discrimination. There, however, the court

1. 42 U.S.C. § 2000e et seq.

2. Section 34–35–1 et. seq., Utah Code Annotated (1953).

3. "Employer" ... does not include religious organizations or associations, religious corporations sole, nor any corporation or association constituting a wholly owned subsidiary or agency of any religious organization or association or religious corporation sole ... 34–35–2, Utah Code Ann. (1953).

4. It shall not be a discriminatory or unfair employment practice: 2(b) For a school, college,

university or other educational institution or institution of learning to hire and employ employees of a particular religion if such school, college, university, or other educational institution of learning is, in whole or in substantial part, owned, supported, controlled or managed by a particular religious corporation, association or society, or if the curriculum of such school, college, university or other educational institution or institution of learning is directed toward the propagation of a particular religion. 34–35–6(2)(b), Utah Code Ann. (1953).

considered the "repeal of existing law" as only one "factor" to consider in determining the extent of California's involvement.

Here we are dealing with a provision which does not just repeal an existing law forbidding private racial discriminations. Section 26 was intended to authorize and does authorize, racial discrimination in the housing market. The right to discriminate is now one of the basic policies of the state. 387 U.S. at 381, 87 S.Ct. at 1634.

Even if it is assumed that "state action" follows *a fortiori* from enactment of a law which repeals, changes or conflicts with then existing laws to the contrary, such is without application in this case.

Plaintiff acknowledges that the common law of Utah did not prohibit private employers from discriminating on the basis of religion. She claims that the Utah Act's religious organization exemption, when enacted, was broader than the analogous exemption contained in § 702 of the Civil Rights Act of 1964 [5] as it then existed, and that as a result of this conflict, the Utah Act encouraged what was then prohibited by federal law. As originally enacted, the exemption contained in § 702 provided in part as follows:

This title shall not apply ... to a religious corporation, association, or society with respect to the employment of individuals of a particular religion or perform work connected with the carrying on by such corporations, association or society of its *religious* activities or to an educational institution with respect to the employment of individuals to perform work connected with the educational activities of such institution. (Emphasis added.)

Subsequently, Utah passed its Anti–Discrimination Act which provided for the complete exemption of religious organizations. Thereafter, and prior to the acts of the defendants at issue here, Congress amended § 702 so that it presently reads, in relevant part:

This Subchapter shall not apply ... to a religious corporation, association, educa-

tional institution or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities.

Plaintiff observes that § 702, as originally enacted, provided limited exemption to religious organizations from Title VII's prohibition of religious discrimination. Such exemption related to the organizations "religious activities". The Utah Act's exemption, on the other hand, draws no distinction between religious and non–religious activities, but provides a complete exemption to religious organizations. It is upon this asserted inconsistency plaintiff bases her claim that the Utah Act encouraged the defendants to discriminate against her. Since, in her view, the teaching of English at a religious school is not a "religious activity", she asserts that § 702 as originally enacted prohibited the type of activity engaged in by the defendants here, but that the Utah Act exempted such activities and thereby involved the state in the acts of the defendant and provided the required "color of state law."

Ignoring the difficulty plaintiff encounters in asserting that the "repeal of existing law" theory of state action can be applied to a situation where state law conflicts with controlling federal law, plaintiff's argument must fail. First, at the time of the acts complained of here, § 702 and the Utah exemption were in accord. Under both acts, religious organizations could discriminate on the basis of religion with respect to religious and non–religious activities alike. Thus, even assuming that, when enacted, the Utah Act conflicted with Title VII, plaintiff's argument that this hiatus in uniformity had effect beyond the time at which the laws converged is, at best, tenuous. Moreover, Title VII has since its inception, excluded from its coverage the type of activity engaged in by defendants. Section 702, as enacted, provided a complete exemption for educational institutions inso-

**5.** 42 U.S.C. § 2000e–1.

far as the educational activities of such institutions are concerned. Thus at the time of the enactment of the Utah Anti–Discrimination Act, the school could have, consistent with Title VII, refused to employ any person for any reason in the furtherance of its educational activities, be they religious or non–religious. Finally, § 703(e) of the Civil Rights Act of 1964[6] then provided and still provides that a religious school may discriminate on the basis of religion with respect to any of its activities, religious or non–religious, educational or non–educational.

■ In view of the foregoing, there can be no real argument that the Utah Act and Title VII were in conflict insofar as they related to the facts presented here. Thus, since the Utah Act provided the defendants with no more relevant freedom to discriminate than they possessed under either the common law of Utah, or under Title VII, it can not be said that the Utah Act's exemption constitutes "state action" for the purposes of a claim under § 1983. State action there was not.

## II. CONSTITUTIONALITY OF STATE AND FEDERAL EXEMPTIONS.

■ Before proceeding to the merits of this challenge there is the question of whether it is necessary to convene a three–judge court pursuant to 28 U.S.C. §§ 2281 and 2282. Those sections, now repealed, apply to actions such as this commenced prior to the effective date of repeal and together prohibit the granting of an injunction restraining the enforcement, operation or execution of a state statute or an Act of Congress on the grounds of unconstitutionality unless the matter has been determined by a three–judge district court. It is well settled, however, that an action seeking solely declaratory relief, and not an injunction, may be heard by a single judge. *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); *Hall v. Garson*, 430 F.2d 430 (5th Cir. 1970).

In the instant case, plaintiff asserts a challenge to the constitutionality of certain provisions of both Utah and federal law which purport to exempt religious schools from the operation of statutes prohibiting religious discrimination in employment. The parties agree, and the court concurs that the relief sought here is properly characterized as declaratory. Plaintiff does not seek to suspend enforcement of legislation, but only to enjoin defendants from discriminating against her in reliance on legislation. No state or federal officers are sought to be enjoined, only school officials. Therefore, plaintiff's challenge may properly be tried by a single judge.

Turning now to the merits, plaintiff requests this court to declare unconstitutional certain of the several provisions of Title VII and the Utah Act which purport to permit the acts of discrimination committed by the defendants. Before proceeding to the particulars of this claim, some statutory exposition is again warranted. Title VII as enacted contained a two–tiered exemption framework for religious organizations and educational institutions. Section 702, the first tier, provided separate exemptions for each. Religious organizations were not prohibited from discriminating on the basis of religion in the employment of those hired to assist in the organization's religious activities. Educational institutions were not, under § 702, restrained from discriminating on any basis when employing those for work in connection with the school's educational activities. Section 703(e), the second tier, exempted educational institutions owned or operated by religious organizations to an extent where they were not prohibited from practicing religious discrimination with respect to any facet of their activities. The 1972 amendments to Title VII, the Equal Employment Opportunity Act, altered this framework. Section 702 was amended such that the exemption provided educational institutions was abolished, but the religious organization exemption was extended so as

---

6. 42 U.S.C. § 2000e–2(e). This section contains language identical to that found in § 34–35–

6(2)(b) Utah Code Ann., *supra*, note 4.

to exclude from Title VII coverage all acts of religious discrimination in employment, regardless of the type of activity involved. Section 703(e) was left unchanged.

The Utah Act, on the other hand, provides a far broader exemption to religious organizations. Although § 34–35–6(2)(b) of that Act contains language identical to that contained in Title VII's § 703(e), it is largely superfluous in that, by virtue of the definition of "employer" contained in § 34–35–2(5), religious organizations and their wholly–owned subsidiaries are totally exempt from compliance with the Act. Against this background of numerous, and arguably overlapping exemptions, plaintiff urges that both Title VII and the Utah Act can be pared in places and construed in others so as to prohibit the religious discrimination at issue here. To this end, plaintiff first seeks a declaration that the exemption presently allowed in Title VII's § 702, to the extent that it permits religious organizations to practice religious discrimination in connection with activities other than religious activities, is unconstitutional as in conflict with the Establishment Clause of the First Amendment and the guarantee of equal protection contained in the Due Process Clause of the Fifth Amendment. Thus, plaintiff contends § 702's present provision was not effective to repeal the exemption contained in original § 702, and that original § 702, with its "religious activities" limitation, should be revived as the only valid expression of legislative intent.

Since, in plaintiff's view, the teaching of secular subjects at the college is not a "religious activity" of the L.D.S. Church, she argues that § 702 does not exempt defendants from Title VII liability.

Plaintiff next turns her focus to the complete exemption provided religious organizations and their subsidiaries in § 34–35–2(5) of the Utah Act. Plaintiff argues that this too should be declared unconstitutional as an establishment of religion [7] and a denial of equal protection. In addition, she claims that to the extent it permits religious organizations to practice discrimination which is prohibited by Title VII, i. e. on account of race, color, sex, or national origin, Title VII pre–empts it.

Finally, plaintiff confronts the "religious educational institution" exemption contained in both § 703(e) of Title VII and § 34–35–6(2)(b) of the Utah Act. Plaintiff would have the court construe this exemption to permit a religious organization to hire its own members to teach in its schools, but not to allow it to discriminate among such members on the basis of their conformance to an ideal of religious practice. But for this construction, plaintiff asserts that this exemption too must fall on First Amendment and equal protection grounds.

At the outset, it appears that the court can confine its analysis to plaintiff's challenge to the religious school exemption contained in Title VII's § 703(e) and adopted in § 34–35–6(2)(b) of the Utah Act. These

---

7. In support of her contention that the exemptions contained in § 702 of the 1964 Civil Rights Act and in § 34-35-2(5) of the Utah Act violate the Establishment Clause, plaintiff relies exclusively on the case of *King's Garden, Inc. v. F. C. C.*, 498 F.2d 51 (D.C.Cir.1974). In that case, a panel of the United States Court of Appeals for the District of Columbia expressed the opinion that the 1972 version of § 702's exemption, covering all of the activities of any religious organization, is of "doubtful constitutionality." However, the court there was concerned with the fact that § 702 would permit religious discrimination by religious organizations in even the most secular of their endeavors. Implicit in the opinion is that court's approval of an exemption for religious schools.

The sponsors of the 1972 exemption were chiefly concerned to preserve the statutory power of sectarian schools and colleges to discriminate on religious grounds in the hiring of all their employees. But the exemption's simple and unqualified terms obviously accomplish far more than this. . . . If a religious sect should own and operate a trucking firm, a chain of motels, a race track, a telephone company, a railroad, a fried chicken franchise, or a professional football team, the enterprise could limit employment to members of the sect without infringing the Civil Rights Act. *Id.* at 54.

*King's Garden* is thus distinguishable from the instant case and supports this court's view that the Establishment Clause does not bar a legislature from permitting sectarian schools to discriminate on the basis of religion in the hiring of teachers.

sections have direct application to the situation presented here, and if they can withstand plaintiff's constitutional attack, the court need not inquire into the validity of the more general exemptions even though the latter might have application as well.

It is plaintiff's theory, as noted above, that this religious school exemption can be rescued by narrow construction. Specifically, plaintiff argues that while the Constitution would permit the L.D.S. Business College to hire only members of the L.D.S. Church, it does not permit the "internal control" of such members by conditioning their employment upon adherence to minimum standards of church participation. In this regard, plaintiff urges the court to apply the definition of "religion" found in § 701(j)[8] to the word "religion" as it appears in the religious school exemption. Section 701(j) provides:

> The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he us unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

It is plaintiff's contention that the religious school exemption, when read in conjunction with § 701(j)'s requirement of reasonable accommodation, would apply only in those instances where a teacher's "religious belief is . . . a significant factor in the particular subjects being taught. . . ." (plaintiff's post–trial memorandum at 29). Neither of plaintiff's proposals is consistent with the legislative purpose in providing the exemptions.

First, her notion that the religious school exemption permits no more than a religious school's preference for those ostensibly affiliated with the religion operating it ignores both reason and policy. It implies that the practice of religion is something separate from what is meant by the term "religion" as it appears in § 703(e). This is clearly at odds with the definition of "religion" contained in § 701(j) and which plaintiff urges the court to apply to the term "religion" as it appears in the exemption. Furthermore, it is inconceivable that the exemptions would purport to free religious schools to employ those who best promote their religious mission, yet shackle them to a legislative determination that all nominal members are equally suited to the task. In short, nothing in the language, history or purpose of the exemption supports such an invasion of the province of a religion to decide whom it will regard as its members, or who will best propagate its doctrine. That is an internal matter exempt from sovereign interference.

Similarly unsupportable is plaintiff's attempt to impose 701(j)'s duty of reasonable accommodation upon exempt religious schools. The short answer to this contention is that the duty to accommodate applies only to those employers who are prohibited from religious discrimination. The import of § 701(j) is to equate the failure to accommodate with discrimination. Thus it makes no sense to provide that religious schools may discriminate on the basis of religion, yet require them to accommodate to divergent religious practice or belief. Essentially, the interpretation plaintiff urges here is nothing more than a request that the court construe away the religious school exemption.

■ As set forth above, it is plaintiff's view that absent the court's adoption of her limiting construction of the religious school exemption, it is unconstitutional insofar as it permits a "religious organization to use its educational institution for purposes of internal control of [its] members." However she provides literally no support for this assertion. The court would be inclined to correct the deficiency by assuming that plaintiff intended that her arguments attacking the constitutionality of § 702 were to apply with equal force to the religious school exemption, but for the fact that the plaintiff allows that the Constitution does not prohibit legislation permitting a religious organization to staff its school with

---

**8.** 42 U.S.C. § 2000e(j).

its own members. Plaintiff fails to detail the constitutional nuances which permit a religious organization to hire its own members to teach, but prohibit it from refusing to retain nominal members who are perceived as not in conformity with the currently expressed ideals of religious practice. This court can't fill that void. Therefore, and since the court is of the view that neither the equal protection clause nor the establishment clause checks the power of the legislature to permit a religious school, be it Mormon, Roman Catholic, Jewish, Protestant or otherwise, the freedom to consider religious practice and belief when hiring its teachers, plaintiff's challenge of the exemption fails.

### III. *1985 CLAIMS.*

Plaintiff also claims that defendant Kirkham violated 42 U.S.C. § 1985(3) when he refused to renew her contract. She alleges that he met with the assistant Commissioner of Education for the Mormon Church, not a party to this action, for the purpose of discussing plaintiff's religious activities, and that the two of them conspired to release her from her employment at the college. Assuming that evidence adduced at trial reveals the existence of a conspiracy, § 1985(3) avails plaintiff no relief. Section 1985(3) provides a remedy to those injured by conspiracies formed "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." Although plaintiff does not identify the deprivation she suffered by virtue of the alleged conspiracy, the court assumes that plaintiff would urge that the alleged conspiracy deprived her of right to the free exercise of her religion under the First and Fourteenth Amendments. However, those amendments proscribe only government interference with religious beliefs. Although the court recognizes that the United States Supreme Court has ruled that the reach of § 1985(3) extends to purely private conspiracies, *see Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), a private conspiracy to be actionable under

§ 1985(3), must nonetheless deprive a person of a right shielded from private action by law. Section 1985 is itself no aegis, but only provides a remedy for violations of those rights which it designates. *See, Great American Federal Savings and Loan Association v. Nototny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). Since plaintiff has no right either under the Constitution or the laws to be free from private religious discrimination by the L.D.S. Business College, her Complaint does not state a claim under § 1985(3).

In sum, plaintiff fails to state a claim under § 1983, § 1985 or Title VII. Therefore, based upon the foregoing, it is hereby ORDERED that plaintiff's Complaint be in all respects dismissed. Let Judgment be entered in accordance herewith.