Robert LYON and Dennis S. Lebofsky and H. Frank Thornton and Nicholas Macri

v.

TEMPLE UNIVERSITY OF the COMMONWEALTH SYSTEM OF HIGHER EDUCATION, and Marvin Wachman, in his official capacity as President of Temple University, and American Association of University Professors, Temple University Chapter.

No. 79–409.

United States District Court, E. D. Pennsylvania.

Jan. 15, 1981.

---

**2.** For example, there is evidence in the record of this case that Appellant may have been paid twice for work done, once by AFS and once by the client. This would have resulted from the unethical control of Devers by AFS and would have made the fees paid by the client excessive. The Bankruptcy Judge must make this sort of determination on remand.

472

Frank Finch, III, Stephen Sheller, Bruce Ludwig, Philadelphia, Pa., for plaintiff.

Marian Gafni, Philadelphia, Pa., for AAUP.

Matthew Strickler, Jill Douthett, Philadelphia, Pa., for Temple.

## MEMORANDUM and ORDER

SHAPIRO, District Judge.

Plaintiffs are male professors at Temple University ("Temple") who allege that Temple and the American Association of University Professors ("AAUP") jointly and wilfully discriminated against plaintiffs on the basis of sex by paying them lower salaries than those paid to female professors of less or equal educational qualifications and/or experience. Plaintiffs charge defendants with violations of the Equal Pay Act of 1963, 29 U.S.C. § 206(d); the Civil Rights Acts of 1866 and 1871, 42 U.S.C. §§ 1983, 1985 and 1986; the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.*; and the Pennsylvania Equal Rights Amendment, Article I, § 28 of the Pennsylvania Constitution. Plaintiff Robert Lyon also claims a conspiracy among the defendants to inflict emotional distress upon him in violation of Pennsylvania law. Presently before the court is a motion by defendant AAUP to dismiss all counts of the complaint. For the reasons set forth herein the motion to dismiss is granted with respect to the Equal Pay Act claim and the claims under §§ 1985 and 1986 and denied without prejudice with respect to the § 1983 and pendent claims.

It is fundamental that in deciding a motion to dismiss, the well-pleaded allegations of the complaint are to be taken as true and the complaint is construed in the light most favorable to the plaintiff. The issue is not whether the plaintiffs will prevail on the merits but whether the plaintiffs are entitled to offer any evidence to support their claims. *E. g., Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Bethel v.*

*Jendoco Construction Corporation,* 570 F.2d 1168 (3d Cir. 1978).

The complaint alleges that the 1973–1976 collective bargaining agreement between Temple and AAUP included a clause, Article III, Paragraph E, which provided for the redressment of existing wage inequities based on race or sex for faculty members at Temple. The alleged purpose of Article III, Paragraph E was "to identify and correct any existing faculty salary inequities based on sex or race" (¶ 19) and "(1) to develop a comprehensive system for determining any internal inequities affecting women or minority faculty members; (2) to guide and advise departmental faculties, chairpersons and deans on redressing any such inequities; and (3) to hear appeals from persons who are dissatisfied with redressment decisions of departmental faculties, chairpersons and deans." (¶ 18). Pursuant to this provision, the faculty of the various schools and colleges at Temple allegedly reviewed the salaries of females and minority faculty members and awarded increases to those found to be entitled to this type of redressment. Male faculty who were not members of a minority were not eligible for these salary increases under Article III, Paragraph E.

Plaintiffs claim the implementation of Article III, Paragraph E resulted in substantial discrepancies in salaries between plaintiffs and certain females in their departments; these women are alleged to be equally or less qualified or to have less experience than plaintiffs. For example, plaintiff Lyon alleges that he was hired at Temple in 1957 and has been a tenured professor since 1963 but as of September 1, 1978, he was earning approximately $3,200 less than a female in his department who was hired in 1967 and elevated to associate professor in 1971. Plaintiffs Lebofsky, Thornton and Macri have alleged similar discrepancies as to their salaries in comparison to females within their departments.

All four plaintiffs filed complaints of discrimination against Temple with the Department of Labor, and each received a letter that his complaint under the Equal Pay Act could not be substantiated because the salary comparisons involved a small number of females rather than the entire department. Plaintiffs Lebofsky, Thornton, and Macri also filed complaints with appropriate state and local agencies and grievances with the AAUP but were denied redress. Construing these facts as true, we now address the counts of the complaint seriatim.

## EQUAL PAY ACT

The Equal Pay Amendments to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* (the "Act"), proscribes discrimination on the basis of sex in the compensation of equal work (with certain enumerated exceptions). This prohibition extends to two distinct entities, employers and unions. Section 206(d)(1) is directed to employers:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except

. . . .

Section 206(d)(2) applies to unions:

No labor organization, or its agents, representing employees of an employer having employees subject to any provisions of this section shall cause or attempt to cause such an employer to discriminate against an employee in violation of paragraph (1) of this subsection.

The latter provision makes it clear that unions are not immune from the mandates of the Act.

But the Act is also clear that aggrieved employees have a cause of action against their employer only. Under 29 U.S.C. § 216(b), only an *employer* is liable for violations of 29 U.S.C. §§ 206 and 207. Section 16(b) provides in pertinent part:

Any *employer* who violates section 206 or 207 of this Act shall be liable to employees affected . . . . Action to recover such liability may be maintained against any *employer.* (Emphasis added)

Labor organizations are not "employers" for purposes of the Act unless the labor organization itself is acting as an employer, 29 U.S.C. § 203(d).

■ The Third Circuit held in *Denicola v. G. C. Murphy Co.,* 562 F.2d 889 (3d Cir. 1977) that a labor union is not liable for contribution to an employer found in violation of the Act. *Accord, Northwest Airlines v. Transport Workers Union of America,* 606 F.2d 1350 (D.C.Cir.1979), *cert. granted,* 445 U.S. 902, 100 S.Ct. 3008, 65 L.Ed.2d 1111 (1980). Plaintiffs seek to limit this case to an action for contribution. However, the holding in *Denicola* was premised on the notion that "[a]n employee may bring an action for back pay under the Equal Pay Act only against his or her employer. Therefore, we must reject [the employer's] . . . contention that [the union] could be liable for back pay." *Id.* at 893. Accordingly, we hold that AAUP cannot be liable in an action by an employee for back pay or other monetary relief for violations of the Act.

Notwithstanding AAUP's insulation from employee claims for monetary relief, plaintiffs argue the union can still be liable for injunctive and declaratory relief under the Act. However, the statutory framework of the Act negates this contention as well.

■ Sections 15 and 17 of the Act, 29 U.S.C. §§ 215, 217, grant the district court jurisdiction to issue injunctive relief for violations of 29 U.S.C. § 206. 29 U.S.C. § 211, with one exception not relevant to this case, provides that "the Administrator shall bring *all* actions under Section 17 [29 U.S.C. § 217] to restrain violations of this Act." (Emphasis added). This section has been construed to vest exclusive authority formerly in the Administrator, and now in the Equal Employment Opportunity Commission ("EEOC"),[1] to bring an action for in-

junctive relief. *Bowe v. Judson C. Burns, Inc.,* 137 F.2d 37 (3d Cir. 1943); *Brennan v. Emerald Renovators, Inc.,* 410 F.Supp. 1057, 1062 (S.D.N.Y.1975); *See, Equal Employment Opportunity Commission v. American Telephone & Telegraph Co.,* 365 F.Supp. 1105, 1121 (E.D.Pa.1973) (Higginbotham, J.), modified 506 F.2d 735 (3d Cir. 1974); *Britton v. Grace Line, Inc.,* 214 F.Supp. 295 (S.D.N.Y.1962). Thus, injunctions will lie against a union for violations of 29 U.S.C. § 206(d)(2), but only if the EEOC, not an employee, is the moving party.

■ In the absence of express authorization of a private action for damages, declaratory or injunctive relief, plaintiffs argue that a private cause of action can be implied from 29 U.S.C. § 206(d)(2) in light of *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). In *Cannon,* the Supreme Court, employing the four-point test set forth in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), implied a cause of action under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* In determining whether to imply a statutory cause of action, the Supreme Court requires analysis of four factors: 1) whether a plaintiff is one of a class for whose especial benefit the statute was enacted; 2) whether there is a legislative intent to create or deny a remedy; 3) whether it is consistent with the underlying legislative scheme to imply a remedy; and 4) whether the cause of action is traditionally one relegated to state law. The analysis must begin with the language of the statute itself. *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979); *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979).

■ We do not question that male employees belong to a class for whose benefit the Act was enacted. However, the underlying legislative scheme precludes a legislative intent that there be a private right of action against a union under this statute.

---

1. The enforcement of powers of the Administrator over the Act were transferred to the

EEOC pursuant to Reorganization Plan No. 1 of 1978, § 1, 43 Fed.Reg. 19807.

In *Cannon* the Court found the second prong of *Cort* satisfied in reliance on the fact that Title IX was patterned after Title VI and the framers of Title IX understood Title VI to authorize private causes of action. There is no such evidence of Congressional intent regarding the Equal Pay Act, which preceded the Civil Rights Act of 1964. As the Third Circuit stated, "the Congressional intent is very plain and the pattern of the statute is perfect." *Denicola, supra* at 893, quoting *Bowe v. Judson C. Burns, supra*. In *Bowe*, the court declined to issue injunctive relief in favor of employees against a union and reasoned that "[t]he framers of the [Fair Labor Standards] Act wished to preserve the rights of labor unions and not to permit the Act to be used to interfere with the internal affairs of a union or the right of a union to discipline its members." *Id.* at 38. While this case precedes the enactment of the Equal Pay Act amendments to the Fair Labor Standards Act, nothing in the existing legislative scheme indicates a desire to depart from the original intent of the Act or to expand union liability by rendering a union subject to suit by employees.

However, it is the third prong of *Cort* which is determinative in denying an implied cause of action. Unlike Title IX, the Act sets up a comprehensive scheme of enforcement which insulates unions from liability in employee suits. Unions are subject to civil and criminal sanctions under 29 U.S.C. § 216(a). Unions are also subject to injunctive and monetary liability in actions brought by the EEOC. The express terms of the Act demonstrate a Congressional intent that unions *not* be held directly liable to employees for unlawful employment practices as co-defendants with employers; neither are they liable for contribution to an employer who has violated the Act. *Cf. Glus v. G. C. Murphy*, 629 F.2d 248 (3d Cir. 1980) (right of contribution in favor of em-

ployer against union exists in federal common law arising from Title VII, 42 U.S.C. § 2000e *et seq.*). Therefore, a private right of action in favor of employees against a union would be inconsistent with the legislative scheme; there is little reason to add a remedy which Congress has foreclosed. Accordingly, we hold there is no implied cause of action under 29 U.S.C. § 206(d)(2) for an employee to sue a union. *See, Denicola, supra*, at 894; *Northwest Airlines v. Transport Workers, supra*, at 1355–1356.

■ We likewise decline to grant declaratory relief against the union under the Act. The granting of such relief is discretionary with the court. Declaratory Judgment Act, 28 U.S.C. § 2201; *e. g., Government Employees Insurance Company v. Keystone Insurance Co.*, 408 F.Supp. 1185 (E.D.Pa.1975). Since we have held the union is insulated from monetary liability and injunctive relief in suits by employees, we see no reason to grant declaratory relief in such an action. Therefore, the Equal Pay Act claim against AAUP is dismissed.

### 42 U.S.C. § 1983

■ AAUP moves to dismiss plaintiffs' claim under 42 U.S.C. § 1983 [2] for failure of the complaint to allege state action properly. Section 1983 provides a cause of action where a federal right or privilege is denied "under color of" any state law, custom or usage. In determining whether state action exists, the relevant inquiry is whether there is a sufficient nexus between the state and the challenged activity, *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), or whether the state has sufficiently insinuated itself in a position of interdependence with the University so that it is a joint participant in the activity, *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 725, 81 S.Ct. 856, 861–862, 6 L.Ed.2d 45 (1961); *Benner v.*

2. 42 U.S.C. § 1983 provides:

§ 1983. Civil action for deprivation of rights
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Oswald*, 592 F.2d 174 (3d Cir. 1979); *cert. denied*, 444 U.S. 832, 100 S.Ct. 62, 62 L.Ed.2d 41 (1979).

The purported allegations of state action are found in three separate paragraphs of the complaint. With respect to defendant Temple, Paragraph 11 avers that Temple is "a Commonwealth of Pennsylvania related institution . . ." with its primary administrative offices in Philadelphia, Pennsylvania. It is further alleged that Temple is "a person within the meaning of Section 1983 and 1985." Paragraph 68 states that the allegations "involve actions by a Commonwealth of Pennsylvania related and supported educational institution . . . ." With respect to defendant AAUP, the allegations of state action are even more sparse. AAUP is alleged to be a "Commonwealth of Pennsylvania Labor Relations Board certified exclusive collecting bargaining representative of all full-time Temple University faculty rank employees . . ." with its primary administrative offices in Philadelphia, Pennsylvania.

Plaintiffs, relying on Judge Higginbotham's opinion in *Isaacs v. Board of Trustees of Temple University*, 385 F.Supp. 473 (E.D. Pa.1974), argue that Temple's actions are deemed "under color of state law;" therefore, AAUP's conduct constitutes a state action as well, since a private party acting in concert with state officials in prohibited conduct is deemed to be acting "under color of law." "[T]o act 'under color of' state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions." *Dennis v. Sparks*, —— U.S. ——, 101 S.Ct. 183, 66 L.Ed.2d 185, 189 (1980); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970).

[8] Although the complaint's allegations of state action are arguably deficient, Temple's activities have been held repeatedly to satisfy the requirements of state action. *Dimmick v. Temple University*, No. 77–4307 (E.D.Pa. December 15, 1980); *Isaacs, supra;*[3] *see, Benner v. Oswald, supra; Philadelphia National Bank v. United States of America*, No. 79–941 (E.D.Pa. December 4, 1980). Temple is a fully accredited institution of higher education and is part of the Commonwealth System of Higher Education. It was initially organized under the Act of April 29, 1874 and reorganized pursuant to the Temple University—Commonwealth Act of November 30, 1965, P.L. 843, 24 P.S. § 2510–1 *et seq.* (Purdon Supp.1980). Therefore, the requisite state action is present as to Temple.

■ The complaint also sufficiently alleges a concerted action between AAUP and Temple to assert a claim for relief against AAUP under § 1983. All counts of the complaint allege joint activity. The complaint alleges AAUP has caused Temple to discriminate against male faculty members and has assisted it in doing so (¶¶ 15, 16). More specifically, AAUP has allegedly agreed with Temple on the contractual provision which gives rise to this dispute (¶ 17). Plaintiffs also allege that AAUP, pursuant to its agreement and conspiracy with defendant Temple, refused to pursue the grievances filed (¶¶ 43, 53, 63). Therefore, plaintiffs are entitled to prove, if they can, that AAUP's activity was sufficiently intertwined with Temple's to constitute wilful participation in joint action in concert with an agent of the state to establish liability under § 1983.

■ In denying AAUP's motion to dismiss the § 1983 claim, we hold only that the requisite state action is present as to AAUP, this being the only issue adequately addressed by the briefs. Having held that plaintiffs have no cause of action under the Equal Pay Act, the only underlying basis perceived by the court for the § 1983 claim

---

**3.** Although Judge Higginbotham's opinion preceded the Supreme Court's in *Jackson v. Metropolitan Edison Co., supra*, its continued vitali-ty is not questioned. *Benner v. Oswald, supra; Braden v. University of Pittsburgh*, 552 F.2d 948, 963 (3d Cir. 1977).

is the Equal Protection Clause of the Fourteenth Amendment. The complaint does not assert the Fourteenth Amendment as a basis for relief, but it does complain of unequal pay based on broad allegations of gender-based discrimination. Such discrimination can be cognizable under the Fourteenth Amendment, e. g., *Caban v. Mohammed*, 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979), but we express no opinion at this time on the narrow issue of whether discrimination based only on unequal pay bargained for to redress salary inequities based on sex states a cause of action under the Equal Protection Clause.

## SECTION 1985 AND SECTION 1986

AAUP also attacks plaintiffs' claim under 42 U.S.C. § 1985(3).[4] Liability in damages under § 1985 is limited to conspiracies where there is a racial or perhaps otherwise class-based discriminatory animus behind the conspirators' action. *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Carchman v. Korman Corp.*, 594 F.2d 354 (3d Cir. 1979) *cert. denied*, 444 U.S. 898, 100 S.Ct. 205, 62 L.Ed.2d 133 (1979).

"The court's opinion in *Griffin* discerned the following criteria for measuring whether a complaint states a cause of action under § 1985(c):

To come within the legislation a complaint must allege that the defendants did (1) 'conspire or go in disguise on the highway or on the premises of another' (2) 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.' It must then assert that one or more of the conspirators (3) did, or caused to be done, 'any act in furtherance of the object of [the] conspiracy,' whereby another was (4a) 'injured in his person of [sic] property' or (4b) 'deprived of having and exercising any right or privilege of a citizen of the United States.' 403 U.S. at 102–103, 91 S.Ct. 1790, at 1798–1799, 29 L.Ed.2d 338.

Section 1985(c) provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates." *Great American S. & L. Assn. v. Novotny*, 442 U.S. 366, 372, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957, 964–65 (1979).

The primary question in this case must be whether a person injured by a conspiracy to violate the Equal Pay Act is deprived of "the equal protection of the laws, or of equal privileges and immunities under the laws" within the meaning of § 1985(c). In *Great American S. & L. Assn. v. Novotny, supra*, the Supreme Court held that a conspiracy to deprive a person of a right created by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* cannot be the basis for a cause of action under § 1985(c). Its reasoning, that if a violation of Title VII could be asserted through § 1985(c), a complainant could avoid most if not all of the detailed and specific provisions of Title VII, is applicable to the Equal Pay Amendments to the Fair

4. 42 U.S.C. § 1985(3) provides:

(3) If two or more persons in any State or Territory conspire, or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice-President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

Labor Standards Act as well. While the administrative process differs, Congress has provided a comprehensive plan as to employers and unions, recognized in *Denicola, supra,* which can be given unimpaired effectiveness only by holding that violation of the Equal Pay Act cannot be the basis for a cause of action under § 1985(c).

In *Novotny,* the court considered the legislative history of the Civil Rights Act of 1964, as amended, and the Civil Rights Act of 1968.

> ... the Civil Rights Act of 1866 and 1871 were explicitly discussed during the course of the legislative debates on both the Civil Rights Acts of 1968 and the 1971 amendments to the 1964 Act, and the view was consistently expressed that the earlier statutes would not be implicitly repealed.... Specific references were made to §§ 1981 and 1983, but, significantly, no notice appears to have been taken of § 1985....

*Great American S. & L. Assn. v. Novotny,* 442 U.S. at 377, fn. 21, 99 S.Ct. at 2351, fn. 21, 60 L.Ed.2d at 967. Likewise, we are not aware that the legislative history of the Fair Labor Standards Act or its amendments make any mention of a concurrent § 1985 remedy to complement the statutory scheme.

Therefore, as in *Rogin v. Bensalem Township,* 616 F.2d 680, 697 (3d Cir. 1980), we need not decide today whether § 1985(3) embraces private conspiracies to discriminate on the basis of factors other than race. *Compare, Milner v. National School of Health Technology,* 409 F.Supp. 1389, 1395 (E.D.Pa.1976) (employment discrimination based on gender with purview of § 1985(3)) *with Cohen v. Illinois Ins. of Technology,* 524 F.2d 818, 829 (7th Cir.) (§ 1985(3) may not constitutionally be applied to redress sexual discrimination), *cert. denied,* 425 U.S. 943, 96 S.Ct. 1683, 48 L.Ed.2d 187 (1976).

Section 1986 is a companion to § 1985(3) and provides the claimant with a cause of action against any person who, knowing that a violation of § 1985 is about to be committed and possessing power to prevent its occurrence, fails to take action.

Because transgressions of § 1986 by definition depend on a preexisting violation of § 1985, if the claimant does not set forth a cause of action under the latter, its claim under the former necessarily must fail also. *Rogin, supra,* at 696.

## DUTY OF FAIR REPRESENTATION

Plaintiffs' brief also attempts to assert a claim against AAUP for breach of its duty of fair representation. Although such a claim may be cognizable in employment discrimination cases, *see generally, Note, Union Liability for Employer Discrimination,* 93 Harv.L.R. 702 (1980), plaintiffs failed to include this as a basis for relief in its complaint. Defendant has had no notice that this claim would be asserted and it is not presently before us.

## RULE 19

Since we have retained plaintiffs' claims against AAUP under § 1983, it is not necessary to decide whether AAUP is a necessary party under Fed.R.Civ.P. 19.

## PENDENT STATE CLAIMS

In addition to federal civil rights claims, plaintiffs have asserted claims against the AAUP based on the Pennsylvania Constitution, the Pennsylvania Human Relations Act and tort law (intentional infliction of mental and emotional distress). "In *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court declared that federal courts have the power to entertain pendent state claims if the federal and state claims 'derive from a common nucleus of operative facts' such that the plaintiff 'would ordinarily be expected to try them all in one judicial proceeding.' The court went on to observe, however, that '[c]ertainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.'" *Rogin, supra,* at 697.

The argument of AAUP to dismiss was premised on the dismissal of all federal claims against it. However, plaintiffs'

claim against AAUP and Temple under § 1983 based on a violation of Fourteenth Amendment Equal Protection rights has not been dismissed and the plaintiffs also assert § 1985 and Equal Pay Act claims based on its violation against Temple. The briefs do not adequately address whether or not the court has discretion or should exercise it to dismiss the pendent state claims in this context. Therefore, the court will deny the AAUP's motion to dismiss pendent claims without prejudice to renew upon a briefing schedule to be considered at the pretrial conference presently scheduled herein. At this conference the court will also ascertain whether or not the parties wish to proceed in the alternative by motions for summary judgment.

## CONCLUSION

Based on the preceding discussion, the claims under the Equal Pay Act, § 1985(3) and § 1986 are dismissed; the motion to dismiss the § 1983 claim and the pendent claims is denied without prejudice.