Kelly Joanna McDONALD, by William Stephen McDONALD and Wilma J. McDonald, Husband and Wife, as Next Friends, Plaintiff,

v.

NEW PALESTINE YOUTH BASEBALL LEAGUE, INC., Ralph Lee, Michael Kiesling, Alan M. Irwin and Thomas Smart, Defendants.

No. IP 83–352–C.

United States District Court, S.D. Indiana, Indianapolis Division.

April 15, 1983.

Joseph Reiswerg of Mantel, Mantel & Reiswerg, Indianapolis, Ind., for plaintiff.

Eric N. Allen of Free, Brand, Tosick & Allen, Greenfield, Ind., for defendants.

STECKLER, District Judge.

This case is before the Court on plaintiff Kelly McDonald's Fed.R.Civ.P. 65 motion for a preliminary injunction and the defendants' Fed.R.Civ.P. 12(b)(1, 6) motion to dismiss the complaint. The Court, having conducted the evidentiary hearing on March 18, 1983, and being fully advised in the premises, is now prepared to issue its rulings and order on both motions.

Kelly McDonald brings this lawsuit as a mechanism to be allowed to play in the boys' baseball league, sponsored by the defendant New Palestine Youth Baseball League, Inc. ("League"), as opposed to playing in the girls' softball league, also sponsored by the defendant League. The basis for her lawsuit is that the defendants are violating her constitutional right of association due to her gender in contravention of 42 U.S.C. §§ 1983 and 1985(3).

**A. Introduction.**

■ For the purpose of clearly understanding the plaintiff's burden of proof on the preliminary injunction request, it is important to remember that this Rule 65 motion is addressed to the Court's discretion. Further, in exercising this discretion the Court must balance four factors:

(1) The adequacy of the plaintiff's remedy at law.

(2) The likelihood of the plaintiff's success on the merits.

(3) Whether the harm threatened by the injury to the plaintiff outweighs the harm threatened by the injunction to the defendants.

(4) Whether the public interest will be disserved by issuing the injunction.

*O'Connor v. Board of Education,* 645 F.2d 578, 580 (7th Cir.1981).

With regard to the defendants' Rule 12(b)(1, 6) motion, the Court notes that at an evidentiary hearing on plaintiff's Rule 65 preliminary injunction request the Court also heard evidence relevant to the defendants' motion to dismiss. Because matters outside the pleadings are being considered in ruling upon this dismissal motion, this motion will be treated as a Fed.R.Civ.P. 56 motion for summary judgment. *Hill v. Trustees of Indiana University,* 537 F.2d 248 (7th Cir.1976).

**B. 42 U.S.C. § 1983.**

The first hurdle plaintiff must clear in her effort to prove a § 1983 action is that the defendants' alleged actions are in the nature of state action. Plaintiff claims the private defendants' actions are imbued with the imprimatur of the state because a "nexus" exists between the private defendants and the state, which nexus is established by:

"1. For calendar year 1982, Brandywine Township, Hancock County, Indiana, paid to the League $500.00 of Federal Revenue Sharing Funds . . . .

"2. For the same period, Sugarcreek [sic] Township, Hancock County, Indiana, gave to the League the sum of $2,500.00 from the Park and Recreation Fund, apparently from revenues other than Federal Revenue Sharing Funds . . ., and has also given the League $800.00 in fiscal year 1983 . . . .

"3. The League's playing fields are located on property leased from the Board of School Trustees for the Community School Corporation of Southern Hancock County (Indiana), next to the Doe Creek Middle School . . . .

"(4) The School allows the Defendants to hold a pancake breakfast fund raiser in and on school property, using the school facilities.

"(5) The playing facilities are used to the exclusion of the remainder of the public."

Plaintiff's Brief in Support of Her Preliminary Injunction Request, p. 5 (filed March 30, 1983).

The inference plaintiff seeks to make from the above facts is that the League's baseball program serves as a substitute for the recreational program the townships are authorized to conduct under Ind.Code 36–10–3–1, et al. The defendants at the evidentiary hearing countered this inference with the argument that, while they did provide a public service, the monies received from the townships were not the predominant source of their financial support. Further, the League's baseball programs did not preclude the townships from conducting their own programs. For these two reasons the defendants deny their program serves as a substitute for any recreational programs which the townships could sponsor. In other words, the defendants' baseball program is not a private activity taking the place of a government function exclusively reserved to the state. Absent such substitution of a private program for an exclusive government function, the defendants argue that the requisite nexus is lacking.

This nexus issue has been addressed by the Supreme Court on several occasions. In *Burton v. Wilmington Park Auth.*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), the Court held that the requisite nexus existed between the state and a private restaurant where the restaurant was located in a public parking garage. The critical factor the Court focused upon was the "symbiotic relationship" between the public garage and the private building, wherein the restaurant was physically and financially an integral part of the public building containing the public garage. *Id.*, 365 U.S. at p. 724, 81 S.Ct. at p. 861. This "symbiotic relationship" test evolved into a "government function" test in *Evans v. Newton*, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373, *i.e.*, a private individual or group exercising power or functions which are governmental in nature become agencies of the state subject to the Fourteenth Amendment. *Id.*, 382 U.S. at 299, 86 S.Ct. at 488. In *Evans*, a private board of managers (composed entirely of Caucasians) sued to replace the City of Macon, Georgia, as trustee of a segregated park deeded in trust to the city with private trustees who would enforce the racial limitations of the bequest. Since the services rendered by this private park were municipal in nature, the private conduct had "become so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon state action." *Id.*

The most recent pronouncement of the Supreme Court on the nexus issue is *Rendell-Baker v. Kohn*, —— U.S. ——, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). The Court in *Kohn* refined the government function test to require the private discriminatory act (dismissal of private school employees in violation of their First, Fifth, and Fourteenth Amendment rights) to be based upon some rule of conduct or policy put forth by the state. The principal facts upon which the *Kohn* plaintiffs alleged the nexus existed were:

(1) the private school (for maladjusted students) performed a government function;

(2) students were referred to the school by city school committees or state agencies; and

(3) approximately 90% of the school's funding came from the State of Massachusetts and cities within the state.

For *Burton* purposes, this relationship was not a symbiotic one because, while the school did conduct a government function, it was not a function reserved exclusively to

the state. *Id.,* 102 S.Ct. at 2771–2772. Having failed to allege or prove any compulsion or influence by the state, the *Kohn* plaintiffs did not satisfy the government function test and, therefore, lacked the requisite nexus. For this reason the Supreme Court affirmed the dismissal of the plaintiff's complaint for failure to state a claim. *Id.*

Based upon the evidence submitted to this Court, it is apparent that even if the five factors (pp. 1168 and 1169, *supra*) upon which plaintiff, Kelly McDonald, alleges the existence of a nexus between the defendants and the state are assumed to be true, she has failed to allege or prove that the League's allegedly discriminatory act (requiring her to play in a girl's softball league instead of a boy's hardball league) has been compelled or influenced by the state. Absent such an allegation or proof, the plaintiff has not, and cannot, establish the requisite nexus. Accordingly, not only is it unlikely that the plaintiff will succeed on the merits of her § 1983 claim, but she also has failed to state a claim for relief under § 1983.

### C. *42 U.S.C. § 1985(3).*

The plaintiff contends that, unlike the elements of a § 1983 action, a § 1985(3) claim does not require that the defendants act under color of state law. In her § 1985(3) count, the plaintiff alleges that the defendants conspired to deprive her of her Fourteenth Amendment rights to equal protection of the laws, as well as to equal privileges and immunities under the law. However, the Fourteenth Amendment guards these rights only against state action—not against private interference. *Shelley v. Kraemer,* 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948); *accord, Great American Fed. S. & L. Ass'n v. Novotny,* 442 U.S. 366, 384, 99 S.Ct. 2345, 2355, 60 L.Ed.2d 957 (1979) (Stevens, J., concurring). Unless the defendants acted under color of state law, they cannot have violated the plaintiff's Fourteenth Amendment rights in a manner to give rise to a § 1985(3) claim. *Wright v. Methodist*

*Youth Services, Inc.,* 511 F.Supp. 307, 309 (N.D.Ill.1981). Therefore, the nexus requirement in a § 1983 action also must be established in a § 1985(3) action. For the reasons stated in Part B, *supra,* the plaintiff has not, and cannot, establish the requisite nexus between the defendants and the state. Accordingly, it is unlikely that the plaintiff will succeed on the merits of her § 1985(3) claim and, further, she has failed to state a claim for relief under § 1985(3).

### D. *Conclusion.*

In conformance with the previously stated rationales, the plaintiff's Rule 65 motion for a preliminary injunction on both counts of her complaint is hereby DENIED. Further, the defendants' Rule 12(b)(6) motion to dismiss the complaint for failure to state a claim is hereby GRANTED. All other motions currently pending are MOOT. The findings of fact and conclusions of law issued contemporaneously with this order are hereby incorporated by reference into this order.

IT IS SO ORDERED.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case is before the Court upon the defendants' Fed.R.Civ.P. 12(b)(6) motion to dismiss the complaint. Matters outside the pleadings have been presented at the evidentiary hearing. This Rule 12(b)(6) motion will be treated as a Fed.R.Civ.P. 56 motion for summary judgment.

After considering the motion, memoranda, evidence, pleadings, and proposed findings of fact and conclusions of law, the Court now finds that there is no genuine issue as to any material fact and that the defendants are properly entitled to judgment as a matter of law.

This action was instituted by the plaintiff for preliminary and permanent injunctive relief, as well as damages, arising out of the defendants' alleged discrimination against the plaintiff due to her gender in violation of 42 U.S.C. §§ 1983 and 1985(3). Pursuant to the defendants' motion and in conformance with Rule 56, the Court finds that the

facts as claimed by the moving parties are true, and exist without controversy. The Court further finds that it is appropriate that summary judgment be entered in favor of the defendants against the plaintiff. In support of the Court's conclusion that summary judgment is appropriate in favor of the defendants, the Court now enters the following findings of fact and conclusions of law.

### Findings of Fact

1. The defendant New Palestine Youth Baseball League, Inc. ("League") is a not-for-profit corporation formed under the Indiana Not For Profit Corporation Act of 1971 and incorporated on March 10, 1977.

2. The individual defendants, Ralph Lee, Michael Kiesling, Alan M. Irwin, and Thomas Smart are either officers or members of the Board of Trustees of the League ("Board of Trustees").

3. The Board of Trustees is solely responsible for making the policy decisions of that corporation.

4. Election of members of the Board of Trustees and Officers of the League takes place at the annual "Parents Meeting" which is held each year during the month of September.

5. There is no provision in the Constitution and Bylaws of the League for any state, federal or local official or agency to have any voice in or influence upon the management of the League.

6. No state, federal or local official or agency nominates, selects or otherwise has a voice in or influence upon the election of the members of the Board of Trustees and Officers other than that impact which a person may have as a private individual who is otherwise eligible for membership in the corporation pursuant to Article V of the Constitution and Bylaws of the League.

7. No state, federal or local official or agency is a member of the Board of Trustees or an Officer of the League.

8. The Board of Trustees establishes the policies, rules, and regulations of the League. No state, federal or local official or agency influences the League in developing or implementing its policies, rules, and regulations of the League.

9. The Board of Trustees has determined that it will offer a girls softball division of the League for girls ages 8 through 13, and that it will offer a boys baseball division for ages 8 through 15. Both the softball division and the baseball division play approximately the same number of games at the same time of the day.

10. The League is not affiliated with Little League Baseball, Inc., a national corporation created by a special act of Congress.

11. The Board of Trustees leases the land upon which their baseball diamonds are located from the Board of Trustees for the Community School Corporation of Southern Hancock County ("School Corporation").

12. The current annual lease for the land on which the diamonds are located is Two Thousand Dollars ($2,000.00) plus an additional Ten Dollars ($10.00) per game if the League uses the baseball diamond located at the New Palestine High School. For the annual sum of Two Thousand Dollars ($2,000.00), the School Corporation agrees to maintain the grass areas, provide trash barrels and trash removal, plus supply for the League's use outside bleacher seating, and rest room and concession areas.

13. The League, at its own expense from funds derived primarily through private donations, players' fees and profits from concessions, has caused to be constructed the following improvements on the vacant land adjacent to the Doe Creek Middle School rented from the School Corporation:

a. baseball diamonds;

b. fences;

c. electric service to the site;

d. lighting at the site; and

e. a concession stand.

14. The League, at its own expense, maintains the diamonds and all improvements placed on the diamonds as well as pays for its own utility expenses.

15. The School Corporation specifically restricts the use of the diamonds by the League to times when school is not in session.

16. Pursuant to the Agreement between the School Corporation and the League, the League retains ownership of all improvements located at the site and is permitted to remove those improvements subject only to restoration of the site to its natural state upon termination of the said Agreement.

17. The School Corporation makes no policy, rule or regulatory decision for the League. The sole relationship between the School Corporation and the League is that of landlord and tenant.

18. During fiscal year 1983, the League received the sum of Five Hundred Dollars ($500.00) from Brandywine Township, Hancock County, Indiana, and the sum of Eight Hundred Dollars ($800.00) from Sugar Creek Township, Hancock County, Indiana. The donation by Brandywine Township constituted 1.6% of the total 1983 projected income of Thirty Thousand Dollars ($30,-000.00) of the League and the donation by Sugar Creek Township constituted 2.6% of the total 1983 projected income of the League.

19. During fiscal year 1982, the League received income in the amount of Fifteen Thousand Four Hundred Forty-five Dollars and Sixty-one Cents ($15,445.61) from concessions and fund raising events. This sum constituted 50% of the total income of the League. The other sources for income were private donations, interest income, registration and tournament fees.

20. The funds donated to the League by the Brandywine and Sugar Creek Townships are donated to the League without attaching any conditions thereto. The League is not required to make any reports to the townships or any other governmental official as to how the money is used.

21. The League is not dependent upon the funds contributed by Sugar Creek and Brandywine Townships for its support or existence and the loss of those funds would not substantially affect the manner in which the League's programs are being offered.

22. The baseball and softball divisions of the League are in no way represented as being sponsored by any municipality or other governmental subdivision nor are these divisions a supplement to any recreational programs sponsored by any governmental subdivision.

## Conclusions of Law

Based upon the foregoing findings of fact, the Court now makes the following conclusions of law.

1. The Court has jurisdiction over the parties and the subject matter of this case.

2. The relationship between the League, the individual defendants, and Brandywine Township, Hancock County, Indiana, is not an interdependent relationship, nor is it a symbiotic relationship of such a degree that it can be said that the League conducts its operations under color of state law.

3. The relationship between the League, the individual defendants, and Sugar Creek Township, Hancock County, Indiana, is not an interdependent relationship, nor is it a symbiotic relationship of such a degree that it can be said that the League conducts its operations under color of state law.

4. The League is not performing a government function exclusively reserved to the state or local government.

5. There is no nexus between the League or individual defendants and the state providing a basis for an action under 42 U.S.C. §§ 1983 and 1985(3).

6. There is no state action involved in the operation of the League and the League is not operating under color of state law.

7. Lacking any state action nexus, the plaintiff has failed to state a claim for relief under 42 U.S.C. §§ 1983 and 1985(3).

8. There is no genuine issue as to any material fact and the defendants are entitled to judgment as a matter of law.

IT IS THEREFORE ORDERED, ADJUDGED and DECREED that the plaintiff, Kelly Joanna McDonald, take nothing by

her complaint against the defendants, New Palestine Youth Baseball League, Inc., Ralph Lee, Michael Kiesling, Alan M. Irwin, and Thomas Smart, and that each side bear its own attorney fees in this action, but that the plaintiff bear the costs of this action.

IT IS FURTHER ORDERED that final judgment be entered in favor of the above-named defendants, and against the plaintiff, Kelly Joanna McDonald.

## JUDGMENT

Pursuant to the Court's order granting summary judgment in favor of the defendants, New Palestine Youth Baseball League, Inc., Ralph Lee, Michael Kiesling, Alan M. Irwin, and Thomas Smart, and the Court on this date having entered its findings of fact and conclusions of law,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the plaintiff, Kelly Joanna McDonald, take nothing and that the action against the above-named defendants be DISMISSED on the merits with each side to pay its own attorney fees. The costs of this action shall be taxed against the plaintiffs.